421 A.2d 688

The THOMAS MERTON CENTER, a nonprofit Pennsylvania corporation and the Stop The B–1 Bomber Task Force of the Thomas Merton Center, an unincorporated nonprofit association,

v.

ROCKWELL INTERNATIONAL CORPORATION, a corporation, and Crosby M. Kelly, an individual.

Appeal of The THOMAS MERTON CENTER.

Superior Court of Pennsylvania.

Argued Nov. 15, 1979.

Filed Aug. 8, 1980.

Petition for Allowance of Appeal Granted Feb. 23, 1981.

---

Vincent A. Colianni, Pittsburgh, for appellant.

Thomas R. Johnson, Pittsburgh, for Rockwell, appellee.

James D. Morton, Pittsburgh, for Kelly, appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

■ Appellant contends that the lower court erred in granting judgment on the pleadings in favor of appellee in this defamation action. We agree and, accordingly, reverse the order of the lower court and remand for further proceedings.

Under Pa.R.C.P. 1034, a motion for judgment on the pleadings may be granted in cases which are so free from

doubt that a trial would clearly be a fruitless exercise. Such a motion is in the nature of a demurrer; all of the opposing party's well–pleaded allegations are viewed as true but only those facts specifically admitted by him may be considered against him. . . . Unlike a motion for summary judgment, the power of the court to enter a judgment on the pleadings is further circumscribed by the requirement that the court consider only the pleadings themselves and any documents properly attached thereto.

*Bata v. Central–Penn National Bank of Philadelphia,* 423 Pa. 373, 378, 224 A.2d 174, 178 (1966), *cert. denied,* 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 433 (1967) (footnote and citations omitted). *See also Karns v. Tony Vitale Fireworks Corp.,* 436 Pa. 181, 259 A.2d 687 (1969); *Beckman v. Dunn,* 276 Pa.Super. 527, 419 A.2d 583 (1980); *Leidy v. Deseret Enterprises, Inc.,* 252 Pa.Super. 162, 381 A.2d 164 (1977). Moreover, in passing on a motion for judgment on the pleadings, a court has the "obligation to consider the pleadings and the inferences therefrom in the light most favorable to the [non–moving party]." *Karns v. Tony Vitale Fireworks Corp., supra,* 436 Pa. at 183, 259 A.2d at 688. Viewed in this light the pleadings in this case disclose the following facts. Appellant, the Thomas Merton Center (Merton), is a nonprofit corporation, some of whose members worked actively in 1976 to oppose the United States' development of a controversial military aircraft known as the B–1 bomber.[1] At the time this action was instituted appellee Crosby M. Kelly (Kelly) served as vice president of communications for appellee Rockwell International Corporation (Rockwell), the prime contractor for the B–1 bomber project. On December 21, 1976, the *Pittsburgh Post Gazette,* a newspaper of general circulation in the Pittsburgh area, published an article written by the Associated Press entitled "B1 Foes Linked to Soviet Funds." The article, in relevant part, reads as follows:

1. Those members formed an unincorporated association called the "Stop the B–1 Bomber Task Force" (Task Force) which joined Merton as a plaintiff in the lower court. The Task Force has not appealed from the order granting judgment on the pleadings to appellees.

A top official of Rockwell International, prime contractor for the B1 bomber, says he's convinced the Soviet Union is secretly funding opponents of the controversial weapons project.

"Oh absolutely, oh sure," responded Crosby M. Kelly, vice president of communications, when asked during a lengthy interview if the Soviets were providing funds.

. . . . .

Kelly offered no specific documentation for Soviet activity in the B1 controversy, but he said the Institute for the Study of Conflict in London supports his thesis in general.

Yesterday, when Kelly learned of The Associated Press' imminent story, he called from California to disclaim that he was speaking as a company official.

"That's pretty dramatic stuff. I have no documentation to establish proof of one dime of their funding," he said.

But Kelly did not deny that he believes Soviets are involved financially. "Sure, undoubtedly they are. I say that, but not from any position of authority."

. . . . .

"I can't understand why he would say that unless it's to discredit us," responded Stella Smetanka, assistant director of the Thomas Merton Center here, another group which Kelly singled out.

Following publication of this article Merton filed a complaint in trespass against both Rockwell and Kelly in which it alleged that the article

was intended to convey, and did convey to the community at large, the impression that members of . . . Merton . . . were Communist sympathizers, associated with Communists or were in fact Communists and . . . was calculated to, and did, hold [Merton] up to public scorn, hatred, [and] ridicule.

Both Rockwell and Kelly denied these allegations and subsequently moved for judgment on the pleadings, contending that the statements attributed to Kelly were not defamatory

as a matter of law and did not identify Merton sufficiently to sustain its claim of defamation. The lower court agreed that the statements were not defamatory as a matter of law and granted judgment on the pleadings in favor of Rockwell and Kelly. This appeal followed.

█ As the lower court correctly noted, it is the duty of the trial court, "in the first instance, to determine whether the communication complained of is capable of a defamatory meaning . . . . If the court determines that the statement is capable of a defamatory meaning, it is for the jury to determine whether it was so understood by the recipient." *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 441, 273 A.2d 899, 904 (1971) (citations omitted). *See also Cosgrove Studio and Camera Shop, Inc. v. Pane*, 408 Pa. 314, 182 A.2d 751 (1962); *Vitteck v. Washington Broadcasting Co.*, 256 Pa. Super. 427, 389 A.2d 1197 (1978); *Doman v. Rosner*, 246 Pa.Super. 616, 371 A.2d 1002 (1977).

A libel is "a maliciously written or printed publication which tends to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession." *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 441, 273 A.2d 899, 904 (1971); *Volomino v. Messenger Publishing Co*, 410 Pa. 611, 613, 189 A.2d 873, 874–75 (1963). A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him, *Cosgrove Studio and Camera Shop, Inc. v. Pane*, 408 Pa. 314, 182 A.2d 751 (1962), and necessarily involves the idea of disgrace. *Vitteck v. Washington Broadcasting Co.*, 256 Pa.Super. 427, 389 A.2d 1197 (1978). "The test is the effect the [statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Corabi v. Curtis Publishing Co., supra,* 441 Pa. at 447, 273 A.2d at 907, *quoting, Boyer v. Pitt Publishing Co.,* 324 Pa. 154, 157, 188 A. 203, 204 (1936).

*Beckman v. Dunn,* 276 Pa.Super. 527, 534, 419 A.2d 583, 586 (1979).

In *Clark v. Allen*, 415 Pa. 484, 204 A.2d 42 (1964), Chief Justice BELL observed that "[c]ertain charges or accusations have been determined by this Court to be libelous. We have decided that calling or referring to any American citizen as *a Communist, or knowingly a member of a Communist organization, or engaging in Communist activities*, is libelous per. se: *Matson v. Margiotti*, 371 Pa. 188, 193, 88 A.2d 892 [1952]; *Albert Appeal*, 372 Pa. 13, 92 A.2d 663 [1952]." 415 Pa. at 496, 204 A.2d at 48 (BELL, C. J.) (emphasis in original). *See also Solosko v. Paxton*, 383 Pa. 419, 119 A.2d 230 (1956), *aff'g* 4 Pa.D. & C.2d 240 (Somerset County 1954) (statements that plaintiff was communist held capable of defamatory meaning); *Americans for Democratic Action v. Meade*, 72 Pa.D. & C. 306 (Phila.County 1950) (statements that plaintiff association "has Communist members, harbors Communists, espouses Communist doctrines, is influenced in its policies by Communists or Communism, and that candidates for public office supported by [it] were consequently receiving support from Communists," *id.* at 309, held reasonably capable of defamatory meaning). *But see Clark v. Allen, supra* (Opinion of BELL, C. J.) (not libelous to write of U.S. Senator that his voting record displayed "communist tendencies"); *McAndrew v. Scranton Republican Publishing Co.*, 364 Pa. 504, 72 A.2d 780 (1950) (not libelous for newspaper to erroneously quote plaintiff as saying, "of course, we all have to have a little Communism today"). Cases in numerous other jurisdictions have held statements identifying persons as communists or associating them in some manner with communism to be defamatory. *See, e. g., Spanel v. Pegler*, 160 F.2d 619 (7th Cir. 1947); *Grant v. Reader's Digest Association*, 151 F.2d 733 (2d Cir. 1945), *cert. denied*, 326 U.S. 797, 66 S.Ct. 492, 90 L.Ed. 485 (1946); *Herrmann v. Newark Morning Ledger Co.*, 48 N.J. Super. 420, 138 A.2d 61 (App.Div.1958), *opinion after rehearing*, 49 N.J.Super. 551, 140 A.2d 529 (App.Div.1958); *Toomey v. Farley*, 2 N.Y.2d 71, 156 N.Y.S.2d 840, 138 N.E.2d 221 (1956). *See generally* Annot., 33 A.L.R.2d 1196 (1954). Evaluating the cases in this area Professor Prosser wrote that "the accusation of membership in the Communist party,

or of Communist affiliation or sympathy, which has led to varying conclusions over the last two decades, is at present all but universally regarded as clearly defamatory." W. Prosser, Handbook of the Law of Torts § 111, at 744 (4th ed. 1971) (footnotes omitted).

In the present case Merton alleged in its complaint that Kelly responded affirmatively when asked whether the Soviet Union was secretly funding opponents of the B–1 bomber, reasserted in a later interview that such funding was taking place, and "singled out" Merton as one of the B–1 bomber opponents to whom he had been referring.[2] Viewing these allegations as true, as we must where judgment on the pleadings has been granted, *Karns v. Tony Vitale Fireworks Corp., supra,* we conclude that the lower court erred in granting judgment on the pleadings to Rockwell and Kelly. It is conceivable, even likely, that some readers of the *Pittsburgh Post Gazette* believed after reading the statements attributed to Kelly that Merton or some of its members either were communists, communist agents, or communist sympathizers. Thus, the statements are clearly capable of a defamatory meaning, and it was error for the lower court to preclude Merton from proceeding with its case. Accordingly, we reverse the order of the lower court and remand this case for further proceedings.

One final matter merits our attention. In its opinion the lower court stated its view that, pursuant to the decisions of the United States Supreme Court in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), Merton could not recover absent proof that Kelly had made his statements "with 'actual malice'– that is with knowledge that [they were] false or with

2. Accordingly, there is no question that Merton was sufficiently identified in the allegedly defamatory statements to maintain this action. *See Farrell v. Triangle Publications, Inc.,* 399 Pa. 102, 105, 159 A.2d 734, 737 (1960) ("[I]f the defamatory publication can reasonably be interpreted as referring to a particular complainant, whether recipients did so conclude is for a jury to determine." (footnote omitted)).

reckless disregard of whether [they were] false or not." *New York Times v. Sullivan*, 376 U.S. at 279–80, 84 S.Ct. at 725–26. *See also Gertz v. Robert Welch, Inc.*, 418 U.S. at 328, 94 S.Ct. at 3001. This was so, the court stated, because Merton, having injected itself into the B–1 bomber controversy, was a "public figure." *See Gertz v. Robert Welch, Inc. supra; Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). The lower court further stated that it did not believe Merton had met its burden of showing "actual malice" on the part of Kelly.

We are not certain why the lower court reached this issue, given its holding that the statements complained of were not defamatory as a matter of law. It is far from settled that the *New York Times* standard of "actual malice" applies to cases involving nonmedia defendants, such as Rockwell and Kelly. The United States Supreme Court has expressly left this question open, *Hutchinson v. Proxmire*, 443 U.S. 111, 132 n.16, 99 S.Ct. 2675, 2687 n.16, 61 L.Ed.2d 411 (1979), and we are aware of no Pennsylvania appellate decision applying the standard to nonmedia defendants as a matter of state law. *Cf. Jacron Sales Co. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1976) (holding the *New York Times* standard applicable to nonmedia defendants as a matter of Maryland law). Moreover, the question of whether a given plaintiff can be deemed a "public figure" is a difficult one which has, at times, divided the United States Supreme Court. *See, e. g., Wolston v. Reader's Digest Association, Inc.*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976).

■ Even assuming, *arguendo*, that the *New York Times* standard does apply to the present case, the court's conclusion that Merton failed to prove "actual malice" on the part of the defendants was premature. The case was presented to the court for decision on the pleadings alone. The record before the court was limited to the pleadings, the motions for judgment on the pleadings, and the parties' respective briefs on the motions, none of which discussed the applicability of the constitutional privilege. The lower court was

without the benefit of any other materials, such as depositions or interrogatories, to aid in determining whether Kelly knew that his statements were false or made his statements with reckless disregard of whether they were false or not. It may well be that after further proceedings the lower court will be called upon to determine the effect, if any, of the *New York Times* standard on the present case based on a record containing sufficient facts to decide the issue. We hold only that the lower court could not properly conclude on the limited record before it that Merton had failed to prove "actual malice" within the meaning of *New York Times* and its progeny.

Order reversed and case remanded for further proceedings.