## Dunn v. Cook

*Joseph R. Siegert,* for plaintiff.
*Christopher C. Fallon, Jr.,* for defendant.

KREMER, *J.,* March 8, 1982—We have before us for consideration defendant's motion for summary judgment in a libel action.

The facts are not in dispute. Plaintiff was the director of the Property Management/Rent Collection division of the Redevelopment Authority of the City of Philadelphia (RDA). Defendant was the president of Nicoles, Inc., which owned and operated La Terrasse, a restaurant in West Philadelphia. La Terrasse leased and occupied only the first floor of a building owned by the RDA.

On February 23, 1979, plaintiff sent a letter to the defendant Cook enclosing an L. & I. notice of alleged fire code violations on the third floor of the building and demanded that defendant correct them under the terms of the first floor lease. Plaintiff also sent a copy of his letter to the Department of Licenses and Inspections. Defendants replied by letter dated February 28, 1979, with copies to plaintiff's immediate supervisor and the Department of Licenses and Inspections. No complaint is made as to the body[1] of the letter. Plaintiff's complaint is addressed to the postscript which read as follows:

---

1. The body of the letter stated:

"Attached find a copy of your February 23, 1979 letter and a copy of the L. & I. fire code violations on the above mentioned property. Please note that according to our lease agreement dated October 1, 1968, Nicoles, Inc., leases only the first floor.

"Accordingly, comply with the violations (sic) notice yourself and inform both the Department of Licenses and Inspections and my office when the work is completed.

"When you have complied with the above, so inform me at (215) 387-3778."

"P.S. Harry, why don't you learn to read? Perhaps then you could stop being the pompous, defensive asshole you have been in *each* dealing that I have had with you over the years; perhaps then you might be able to be more civil to those who employ you and who pay your salary, the taxpayers. Try not to forget, Harry, you *are* supposed to be a 'public servant.' "

Defendants contend that the comments in the postscript are not defamatory; that they were not intended to be taken literally. They contend that their comments must be regarded as "a spoof, satire and nothing more"; that the comments were not defamatory as a matter of law. We have no difficulty in rejecting the defendants' pretense that they were only engaged in a "spoof or satire." The defendants were engaged in intemperate and excessive insult and invective, an angry over-reaction to a clear error on the part of the plaintiff. It is clear that the code violations as to the *third* floor did not apply to and were not the responsibility of the *first* floor tenant. A simple recitation of fact would have spared us this forensic experience with these parties.

Plaintiff contends that a light meaning cannot be ascribed to the postscript; that it clearly damaged his reputation in the community and affected his ability to earn a living.

Summary judgment may be granted only in cases where there is no genuine issue of material fact and where the moving party is entitled to a judgment as a matter of law. Pa. R.C.P. 1035. In determining whether there is a dispute of material fact, the court must take a view of the evidence most favorable to the party against whom the motion is directed, giving that party the benefit of all favorable inferences that might reasonably be drawn from the evidence.

The burden of proving the absence of any factual issue is therefore placed on the moving party. Badami v. Dimson, 226 Pa. Super. 75, 310 A.2d 298 (1973); Casella v. P.N.I., 2 P.I.C.O. 443, (Philadelphia County, Oct. term 1972, no. 1405, June 2, 1978). Here, the facts are undisputed. The issue before the court is whether the comments in the postscript are capable of a defamatory meaning and are sufficient to predicate an action for libel.

Both plaintiff and defendant agree that it is the function of the court to make an initial determination as to whether the statements complained of are capable of a defamatory meaning. Corabi v. Curtis Pub. Co., 441 Pa. 432, 273 A.2d 899 (1971); Vitteck v. Washington Broadcasting Co., Inc., 256 Pa. Super. 427, 389 A.2d 1197 (1978); Thomas Mertin Center v. Rockwell International Corp., 280 Pa. Super. 213, 421 A.2d 688 (1980); Casella v. Philadelphia Newspapers, Inc., supra. Only if the court initially determines that the statements are capable of a defamatory meaning may the case go to a jury to determine whether that meaning was so understood by the recipient or recipients.

Some of our law of defamation was reviewed by Judge Sidney Hoffman in Zelik v. Daily News Publishing Company, 288 Pa. Super. 277, 281-82, 431 A.2d 1046, 1048 (1982)[2] as follows:

" 'A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' " Corabi v. Curtis Publishing Co., 441 Pa. 432, 442, 273 A.2d 899, 904 (1971) (quoting Cosgrove Studio

---

2. The panel consisted of Judges J. Sidney Hoffman, James R. Cavanaugh and Gwilym A. Price, Jr.

and Camera Shop, Inc. v. Pane, 408 Pa. 314, 318, 182 A.2d 751, 753 (1962)). "In short, . . . 'Defamation is . . . that which intends to injure "reputation " in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him. It necessarily, however, involves the idea of disgrace . . .' " Vitteck v. Washington Broadcasting Co., supra, at 432, 389, A.2d at (quoting W. Prosser, Handbook of the Law of Torts sec. 111, at 739 (4th ed. 1971)). " 'The test is the effect the [communication] is fairly calculated to produce, the impression it would naturally engender in the minds of the average persons. among whom it is intended to circulate.' " Corabi v. Curtis Publishing Co., supra, at 447, 273 A.2d at 907 (quoting Boyer v. Pitt Publishing Co., 324 Pa. 154, 157, 188 A.2d 203, 204 (1936)) . . . "In its examination of the meaning of the communication, the court should read the allegedly defamatory words in context." Beckman v. Dunn [276 Pa. Super. 527, 534, 419 A.2d 583, 586 (1980)].

In the Cosgrove case, supra, it was also stated: "A libel is a maliciously written or printed publication which tends to blacken a person's reputation or expose him to public hatred, contempt or ridicule or injure him in his business or profession." See also, Sarkees v. Warner-West Corp. 349 Pa. 365, 37 A.2d 544 (1944).

Plaintiff contends that the postscript attacks him as illiterate, pompous, defensive and uncivil. He claims that because his job requires him to deal with the public, the comments are an impression of incompetency and unfitness in his employment. He argues that the comments attacked him in "the occupational community where the larger part of [his] interests and activites are carried on;" that the com-

ments lowered him in the estimation of the community and diminished the respect, goodwill and confidence in which he was held.

We cannot agree with plaintiff's exaggeration that the statement really accused him of illiteracy. In context, the reference to learning "to read" was an accusation of error, not an accusation of illiteracy. Characterizations such as "pompous", "defensive" and "uncivil" do not, in the context of this case, constitute actionable defamation.

The use of the term "asshole" is also not a matter of libel. Profanity is not a libel. It is not a biological usage in this case. It is a vulgarism used as a term of personal invective to reflect that the target of the term is not held in the highest esteem.

To be defamatory, statements must be such that they involve what Prosser characterized as "the idea of disgrace." We give consideration to the effect the communication is fairly calculated to produce, the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate. A jury could find that plaintiff was subjected to an unnecessary and unwarranted personal attack. However, we cannot permit a conjecture that he was disgraced in the eyes of his superior and any others who saw the letter. Plaintiff was undoubtedly embarrassed and annoyed by the letter. However, upon examination of the context of the alleged defamation, it is clear that plaintiff's own error initiated and impelled defendant's excessive and bad-mannered response. Plaintiff failed to properly and carefully read the defendant's lease. He mistakenly sent the code violations notice to the wrong person — the defendant. The real cause of plaintiff's annoyance is not only the uncomplimentary manner in which he is treated in the postscript, but the additional fact that he was in error

and that his error was brought to the attention of his superiors and the people he works with.

If the postscript had not been written, and only the body of the letter had been sent, the plaintiff would nevertheless have been embarrassed and annoyed.

Plaintiff's annoyance and embarrassment are not enough to sustain an action for defamation. In Scott-Taylor, Inc. v. Stokes, 425 Pa. 426, 428, 229 A.2d 733, 734 (1967) a slander action was initiated because the defendant characterized buildings owned by plaintiff and said "they look like chicken coops", Mr. Justice Musmanno stated:

"It is not enough that the victim of the 'slings and arrows of outrageous fortune', be embarrassed or annoyed, he must have suffered that kind of harm which has griviously fractured his standing in the community of respectable society. We said in McAndrew v. Scranton Repub. Pub. Co., 364 Pa. 504, 510-11 [72 A.2d 780, 782 (1950)]: 'Statements cannot be adjudged defamatory merely because they are annoying and embarrassing to the person to whom they are attributed . . . Annoyance does not constitute defamation.' "
Defendant's postscript comments were born out of pique. This lawsuit by the plaintiff stems from the same source.

In Bogash v. Elkins, 405 Pa. 437, 440, 176 A.2d 677, 679 (1962), Mr. Chief Justice Bell stated: "Statements which represent differences of opinion or are annoying or embarrassing are, without more, not libelous." Casella v. Philadelphia Newspapers, Inc. supra.

In a sense, we are importing into the law of libel a *de minimus* concept that is, indeed, part of the

qualified constitutional privilege of free speech.[3] In the Scott-Taylor case Justice Musmanno stated, "To allow a recovery in a case of this kind would be to seriously infringe on the right of free speech." The law of libel is too important and too valuable a companion to the first amendment to permit it to be subverted by matters of too little moment. That is what Justice Musmanno meant in the Scott-Taylor case when he characterized the plaintiff's lawsuit as "a tempest in a teapot. a hurricane in a fish bowl, or a Pickett's Charge in a chicken coop." This duty to make an assessment of all of the facts and circumstances of a particular case is what is meant by the enjoinder to examine the language "in context."

In context, it is also important to note that plaintiff was dealing with the defendants as a representative of the government. From the viewpoint of some of the public, the government is over-riddled with petty authoritarians or tyrants. In our form of government when one carries the mantle of governmental power and misuses it or erroneously uses it, he can expect a somewhat overreaction from one who conceives of himself as being victimized or abused. The defendants' bad manners were conjoined with indignation at government error.

As indicated herein, for the various reasons expressed above, we have concluded that the defend-

---

3. In reaching our conclusion, we are fully aware of the cautions contained in Burke v. Triangle Publications, Inc., 225 Pa. Super. 272, 276, 302 A.2d 408, 411 (1973) and Vitteck v. Washington Broadcasting Corp., 256 Pa. Super. 427, 389 A.2d 1197, 1201 (1978) against a premature determination of the question of qualified constitutional privilege on preliminary objections or demurrer. Where there is no factual dispute, however, it is the duty of the court to pass upon the question of sufficiency.

ants' comments were not and could not be defamatory. Accordingly we enter the following

### ORDER

And now, this March 8, 1982, for the reasons set forth in the foregoing opinion, defendants' motion for summary judgment is granted and it is hereby ordered that judgment be and it is hereby entered in favor of defendants and against plaintiff.