419 A.2d 583

**Gail McK. BECKMAN, Appellant,**

v.

**Richard S. DUNN and Trustees of University of Pennsylvania.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed April 11, 1980.

528

William F. Coyle, Philadelphia, for appellant.

Richard M. Shusterman, Philadelphia, for appellee.

Before PRICE, DOWLING and GATES, JJ.*

* President Judge G. THOMAS GATES of the Court of Common Pleas of Lebanon County, Pennsylvania, and Judge JOHN C. DOWLING of

PRICE, Judge:

Appellant brought an action for defamation alleging that she had been libeled in a letter written by Professor Richard S. Dunn, Chairman of the department of history at the University of Pennsylvania. In a well–reasoned opinion, the Honorable Edward J. Blake granted appellees' motion for judgment on the pleadings[1] based on his finding that the allegedly defamatory statements were incapable of defamatory meaning. We agree and affirm the order of the trial court.

To determine the propriety of awarding judgment on the pleadings, we must treat the motion as we would a preliminary objection in the nature of a demurrer, *Trost v. Clover*, 234 Pa.Super. 255, 338 A.2d 630 (1975), by accepting as true all well–pleaded averments of fact of the party against whom the motion is granted and considering against him only those facts that he specifically admits. *Bata v. Central–Penn National Bank*, 423 Pa. 373, 224 A.2d 174 (1966), *cert. denied*, 386 U.S. 1007, 87 S.Ct. 1348, 18 L.Ed.2d 433 (1967); *Shumaker v. Lear*, 235 Pa.Super. 509, 345 A.2d 249 (1975). A judgment on the pleadings will not be entered when unknown or disputed issues of fact are present. *Potts Manufacturing Co. v. Loffredo*, 235 Pa.Super. 294, 340 A.2d 468 (1975).

Viewed in this fashion the pleadings in this case disclose the following facts. Appellant was a graduate student in the department of history at the University of Pennsylvania from 1964 to 1967. In her pursuit of a Ph.D. degree, she was required to pass a departmental comprehensive test. Appellant took an oral examination before a committee of three history department faculty members in September of 1966. The examining committee decided that her performance was inadequate and that the continuation of her studies was not merited. Appellant appealed this decision and was granted

the Court of Common Pleas of Dauphin County, Pennsylvania, are sitting by designation.

1. Pa.R.C.P.No. 1034.

the opportunity to take a second examination, in writing. Once again, the examiners found her work inadequate.

From 1966 to December 31, 1969, appellant petitioned the university and the department in an effort to reverse the department's decision that she was ineligible to continue in the Ph.D. program. In February of 1968, she received a written notice from the University of Pennsylvania that it was the policy of the history department to allow to each student no more than two opportunities to pass the examination and that the department had voted unanimously to deny an exception to the rule in her case.

On May 7, 1976, nine years after her termination as a Ph.D. candidate, appellant wrote to Professor James O. Freedman, Ombudsman of the University, requesting that he reopen her case because of doubt about the circumstances under which she was denied the degree and that he impartially appraise it after investigation. Ombudsman Freedman responded by sending a copy of appellant's grievance to Professor Dunn, who, as well as being chairman of the history department, had been one of the examiners at both of appellant's examinations. By letter of June 7, 1976, Professor Dunn requested that the case not be reopened and gave a detailed review of the reasons that appellant failed to qualify for the degree. During the course of this discussion he made the following statements upon which the instant action is based:

"In the months following [the first] examination, Ms. Beckman spent far more time quarreling with our verdict, and seeking to overturn it, and fighting over the arrangements for a re–examination, than she did in making further preparations. Between September 1966 and February 1967, I find in our file, seven letters from her, fifteen letters concerning her case by graduate chairman, James C. Davis, and five letters from Provost David Goddard, who became involved in the case when Ms. Beckman and her mother appealed to him, as well as to University Trustee Robert L. Trescher about her mistreatment by the History Department. Eventually, a new

examination was set up on terms meeting most of her demands. . . . When, however, this examination took place, Ms. Beckman did generally worse than the first time. This was especially true in my case, since I had found her work passable the first time, but *totally inadequate* in the written exam." (emphasis added to show allegedly defamatory language).

In summation, Professor Dunn wrote:

"Thus my department considered this case closed nine years ago. With Roy Nichols now dead, George Haskins not a member of our department, George Potter in England and Gaines Post in Texas, I think she has some gall to revive her old imputations against the integrity and standards of our department. It should be considered that Ms. Beckman did less than two years of graduate work in History at Penn from which she received an M.A. degree. Setting her examination aside, *she was never considered one of the star students in our department.* In the only departmental seminar that she took, from me, *she did quite mediocre work and ended with a grade of B + . I have a horrid suspicion that if Ms. Beckman by hook or by crook can find an 'impartial' board to set aside the results of her two exams, she will then demand that she be granted the Ph.D. on the basis of the edition of Pennsylvania Laws, 1680–1700, that she has recently published.* I hope that you can see any such outcome would be totally unacceptable to the Penn History Department." (emphasis added to show allegedly defamatory language).

A libel is "a maliciously written or printed publication which tends to blacken a person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession." *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 441, 273 A.2d 899, 904 (1971); *Volomino v. Messenger Publishing Co.*, 410 Pa. 611, 613, 189 A.2d 873, 874–75 (1963). A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him, *Cosgrove Studio and*

*Camera Shop, Inc. v. Pane,* 408 Pa. 314, 182 A.2d 751 (1962), and necessarily involves the idea of disgrace. *Vitteck v. Washington Broadcasting Co.,* 256 Pa.Super. 427, 389 A.2d 1197 (1978). " 'The test is the effect the [statement] is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate.' " *Corabi v. Curtis Publishing Co., supra* 441 Pa. at 447, 273 A.2d at 907, *quoting, Boyer v. Pitt Publishing Co.,* 324 Pa. 154, 157, 188 A. 203, 204 (1936). It is a matter of law for the court's determination whether the communication complained of can fairly and reasonably be construed to have the libelous meaning ascribed to it by the complaining party. *Bogash v. Elkins,* 405 Pa. 437, 176 A.2d 677 (1962); *Doman v. Rosner,* 246 Pa.Super. 616, 371 A.2d 1002 (1977). In its examination of the meaning of the communication, the court should read the allegedly defamatory words in context. *MacRae v. Afro–American Co.,* 172 F.Supp. 184 (E.D.Pa.1959), *aff'd,* 274 F.2d 287 (3d Cir. 1960); *Corabi v. Curtis Publishing Co., supra.*

Appellant contends that the trial court erred in determining that the statements were incapable of defamatory meaning. We disagree.

 Since the nature of the audience hearing the remarks is a critical factor in considering whether a communication is capable of defamatory meaning, it is noteworthy that the statements called to our attention were made by Professor Dunn in response to Ombudsman Freedman's contact concerning reopening Ms. Beckman's case and were intended for his perusal. We have no indication that this was not confidential or was intended to be communicated to anyone outside the university administration. Thus, the intended audience is a limited one and not one, we believe, that would act to ostracize and shun Ms. Beckman as a result of these statements. Although the letter certainly might be sufficient to embarrass or annoy Ms. Beckman, that type of harm is not sufficient to be legally compensable. *Scott–Taylor, Inc. v. Stokes,* 425 Pa. 426, 229 A.2d 733

(1967); *Redding v. Carlton*, 223 Pa.Super. 136, 296 A.2d 880 (1972).[2]

 The evaluation of an academic performance of this nature necessarily includes subjective elements that render statements, of the kind complained of here, akin to opinion. *See Keddie v. Pennsylvania State University*, 412 F.Supp. 1264 (M.D.Pa.1976). Opinion, without more, is not actionable as libel. *Bogash v. Elkins, supra.* The allegedly libeled party must demonstrate that the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion. Restatement (Second) Torts § 566 (1976). Professor Dunn's letter clearly indicated that his evaluation of her academic abilities was based upon her failure to demonstrate a generalized knowledge of history because of the limited number of courses she had taken at Penn, inadequate preparation because of her employment during that time and continued bickering about her alleged mistreatment during the first exam, and her previous lackluster performance in his class. These facts are not defamatory, and thus, appellees will not be subject to liability for the statement of them or the opinion derived from them.

The statement that Ms. Beckman would act by "hook or by crook" is also obviously opinion since it is couched in the preface that this is Professor Dunn's "suspicion." Although appellant contends that this particular statement was intended to imply use of immoral or illegal means, this contention is disputed by the context of the statement. Professor Dunn's previous recitation of Ms. Beckman's actions of writ-

**2.** Appellant disputes the conclusion that the communication does not create a legally recognizable harm by asserting that one whose scholarly reputation has been cast into doubt is unlikely to be employed by universities, to receive research grants, or to have one's literary efforts accepted by libraries and scholars. The complaint contains no allegations that the publication was intended or likely to be so wide. It is too late at this stage to raise this specter, and we find no facts to support it. The only doubt concerning her scholarly reputation that might arise in the academic community in general would result from appellant's failure to receive the Ph.D. degree, and not from the statement in Professor Dunn's letter. This circumstance is without redress through this action.

ing letters and soliciting others within the university administration to write about her mistreatment, and the nine year delay in her action during which several members of the department had become unavailable, indicates that this is the foundation of his opinion. Thus, undisclosed defamatory facts concerning prior illegal or immoral activity may not reasonably be inferred from this phrase, and Professor Dunn's expression of his opinion is not actionable.

■ Furthermore, even if the communication were capable of defamatory meaning, we agree with appellees' claim that the publication was made on a conditionally privileged occasion relieving appellees of any liability. Under these circumstances, the complaining party bears the burden of proving abuse of the privilege, but we find as a matter of law that appellant has not alleged sufficient facts to demonstrate that she could produce evidence that, if believed, would be sufficient to prove an abuse of the conditional privilege.

■ Communications made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause are privileged. *Baird v. Dun & Bradstreet, Inc.*, 446 Pa. 266, 285 A.2d 166 (1971); *Dempsky v. Double*, 386 Pa. 542, 126 A.2d 915 (1956).

> " 'An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.' " *Rankin v. Phillippe*, 206 Pa.Super. 27, 30, 211 A.2d 56, 58 (1965), *quoting*, Restatement of Torts § 596 (1939).

Thus, proper occasions giving rise to a conditional privilege exist when: (1) some interest of the person who publishes defamatory matter is involved; (2) some interest of the person to whom the matter is published or some other third person is involved; or (3) a recognized interest of the public is involved. *Keddie v. Pennsylvania State University, supra; MacRae v. Afro–American Co., supra.*

Clearly, a proper occasion resulting in a conditional privilege was present in this case. An interest of Professor Dunn's was involved because his integrity was called into question by Ms. Beckman's letter impugning the fairness of the examination committee's decision on her case. An interest of Ombudsman Freedman, to whom publication was made, was also involved because it was his duty in fulfillment of his administrative office to investigate such grievances. Professor Dunn and Ombudsman Freedman, as members of the administration of the university, also have a strong common interest in the qualifications of those to be granted a degree from that university in order to maintain the standards and reputation of the institution.

Abuse of a conditional privilege is indicated when the publication is actuated by malice [3] or negligence, *Baird v. Dun & Bradstreet, Inc., supra,* is made for a purpose other than that for which the privilege is given, *Rankin v. Phillippe, supra,* or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, *id.,* or includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose. *See* Restatement (Second) Torts § 599 (1976). The pleadings fail to demonstrate as a matter of law that Professor Dunn's evaluation of appellant's academic skills resulted from intentional, reckless, or wanton conduct and was not a good faith judgment about her qualifications. His opinion of her academic abilities was reached after considerable exposure to her work and no lack of reasonable care or diligence in ascertaining its validity is indicated. *See Keddie v. Pennsylvania State University, supra.* The publication was not excessive in the scope of material communicated or the extent of circulation and was made for a proper purpose. Under these circumstances, the fact that the publication may have been inspired, in part, by resentment or

---

**3.** Legal malice consists of a wrongful act, done intentionally without just cause or excuse, *Corabi v. Curtis Publishing Co.,* 441 Pa. 432, 273 A.2d 899 (1971), or generated from reckless or wanton disregard of another's rights. *Purcell v. Westinghouse Broadcasting Co.,* 411 Pa. 167, 191 A.2d 662 (1963).

indignation at the conduct of the person defamed does not constitute abuse of the privilege. *Rankin v. Phillippe, supra.* This communication was published in furtherance of important interests and was not wrongful. Therefore, it is entitled to protection.

In accord with the foregoing reasoning, we affirm the order of the court of common pleas.