**Rybas v. Wapner**

*Benjamin Paul,* for plaintiff.
*Steven S. Wigrizer,* for defendant.

GOODHEART, *J.,* February 11, 1982 — This is an appeal from an order of this court of April 23, 1981, granting summary judgment for defendants.

On May 7, 1979, plaintiff John Rybas instituted a defamation action against defendants Morton B. Wapner, Esq., Shelly Forman, individually and trading as Shelly's Pharmacy, and Spawd, Inc. Plaintiff alleged that he had been libeled in a December 16, 1977 letter written by Morton Wapner, Esq., attorney for the other defendants in this action, and addressed to Benjamin Paul, Esq., attorney for plaintiff. The letter had been written by Mr. Wapner in the course of settlement discussions concerning the ongoing litigation between Mr. Wapner's and Mr. Paul's respective clients.[1] In his

---

1. As of the date of the letter, plaintiff John Rybas and Defendant Shelly Forman, individually and trading as Shelly's Pharmacy, were involved in two lawsuits concerning rent rates and breach of lease disputes: John Rybas v. Shelly Forman, C.C.P., June term, 1976, no. 1210, and John Rybas v. Shelly Forman t/a Shelly's Pharmacy, C.C.P., September term, no. 3494.

letter, Mr. Wapner made the following statement upon which the instant action is based:

"If Mr. Rybas ever intends to settle this amicably, it is going to be incumbent upon him to make some gesture of good faith, some attempt to demonstrate that he is not as anti-Semitic as he appears to be, and to make some effort at trying to live together as a good neighbor."

On May 29, 1979, defendants filed preliminary objections to plaintiff's complaint in the nature of a demurrer, a motion for more specific pleadings, and a motion to strike. Court of Common Pleas Judge Armand Della Porta by order of December 17, 1979, sustained defendant's preliminary objections. By order of September 19, 1980, however, Judge Della Porta granted plaintiff's petition for reconsideration, vacated his order of December 17, 1979 and overruled defendants' preliminary objections to plaintiff's complaint.

On April 23, 1981, jury trial was scheduled before this court. In order to conserve judicial resources and time, attorneys for both sides requested oral argument before the jury was empanneled to determine whether plaintiff could establish a prima facie case of libel and survive a compulsory nonsuit at trial. This court treated the argument, with agreement by the attorneys, as a defense motion for summary judgment. At the close of the argument, and upon consideration of the legal memoranda submitted by the parties, this court granted defendants' motion for summary judgment. This court found that (1) the words in the letter did not constitute libel as a matter of law, (2) the communication was privileged, and (3) Plaintiff had failed to prove special damages as is required for communications that do

not constitute libel per se.[2] From the order of this court of April 23, 1981, plaintiff takes the instant appeal.

Under the applicable provisions of the defamation statute, plaintiff has the burden of proving the defamatory character of the communication at issue.[3] A court must initially determine whether the plaintiff has met this burden as a matter of law. Fogel v. Forbes, Inc. 500 F. Supp. 1081 (E.D. Pa. 1980); Beckman v. Dunn, 276 Pa. Super. 527, 419 A.2d 583 (1980).

A libelous communication is a "maliciously written or printed publication which tends to blacken a

---

2. N.T., April 23, 1981, pp. 12-15.

3. The relevant section of the defamation statute provides as follows:

§8343. Burden of proof.

(a) Burden of plaintiff. — In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

(b) Burden of defendant. — In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:

(1) The truth of the defamatory communication.

(2) The privileged character of the occasion on which it was published.

(3) The character of the subject matter of defamatory comment as of public concern. 42 Pa. C.S.A. §8343 (P.L. 202, No. 53, eff. 60 days after April 28, 1978).

person's reputation or to expose him to public hatred, contempt, or ridicule, or to injure him in his business or profession." Corabi v. Curtis Publishing Co., 441 Pa. 432, 441, 272 A.2d 889, 904 (1971). An expression of opinion by itself is not libel. Bogash v. Elkins, 405 Pa. 437, 176 A.2d 667 (1962); Beckman v. Dunn, 276 Pa. Super. 527, 419 A.2d 583 (1980); Redding v. Carlton, 223 Pa. Super. 136, 296 A.2d 880 (1972). Statements which are mere "rhetorical hyperbole" or "vigorous epithet," such as a statement accusing a plaintiff of bigotry, are also not actionable as libel. Sweeney v. Phila. Record Co., 126 F.2d 53 (3d Cir. 1942); Raible v. Newsweek, Inc., 341 F. Supp. 804 (E.D. Pa. 1972).

The statement which is the basis for the instant action ("If Mr. Rybas ever intends to settle this amicably, it is going to be incumbent upon him to make . . . some attempt to demonstrate that he is not as anti-Semitic as he appears to be") is a statement that at most accuses plaintiff of appearing to be anti-Semitic. The statement reflects the opinion of Morton Wapner, Esq., as an attorney for an adverse party, that plaintiff's intransigence was responsible for the breakdown in the ongoing settlement negotiations. The statement had been made by Mr. Wapner in response to a similar accusation levied at Mr. Wapner's client in an earlier letter written by plaintiff's attorney Benjamin Paul, Esq. In Mr. Paul's letter of December 12, 1977, addressed to Mr. Wapner, copies of which were also sent to Mr. Wapner's client, Shelly Forman, Mr. Paul accused Mr. Forman of stalling and being insincere in settlement negotiations.[4]

---

4. This court questions the propriety of the practice of communicating directly with the adverse party instead of the adverse party's attorney. Direct communication with an

In this context, the comment made by Mr. Wapner in reply to Mr. Paul's letter can be viewed as merely a "vigorous epithet" made in the course of heated settlement negotiations.

In determining whether a particular written statement is libelous, the nature of the intended audience of the statement must also be considered. Corabi, supra, Boyer v. Pitt Publishing Co., 323 Pa. 154, 188 A. 202 (1936); Beckman, supra. A statement may be libelous if made to a particular audience at a given time and place, but may lose its libelous character if made to a different audience at another time and place. Restatement (Second) of Torts, §614, comment (b) (197). If the intended audience would not tend to shun the plaintiff as a result of the alleged defamatory communication, the statement is not libelous.

Mr. Wapner's letter was intended only for the private perusal of Mr. Paul. Unlike Mr. Paul, Mr. Wapner did not make it a practice of forwarding copies of his correspondence with other attorneys directly to the other attorney's clients. Mr. Paul, himself a member of the Jewish faith, did not shun his client as a result of Mr. Wapner's letter, nor was Mr. Wapner's letter intended to elicit such a response. It was, in fact, Mr. Paul who gave the letter wider circulation than originally intended in his vigorous defense of his client for the alleged defamatory charge.

---

adverse party who is represented by competent counsel creates dissension and unwarranted interference with the opposing side's attorney-client relationship. By sending copies of the letter accusing defendant Shelly Forman of insincerity in settlement negotiations directly to Mr. Forman himself, plaintiff's attorney in all likelihood precipitated the forceful response given by Mr. Wapner as Mr. Forman's attorney.

When viewed in light of the limited intended audience of the communication and the context in which it was made, the statement at issue is devoid of actionable character as a matter of law. Furthermore, even if Mr. Wapner's statement could possibly be construed as having a libelous meaning, the statement would be privileged.

The privilege given to communications made at any stage of a judicial proceeding is absolute. Binder v. Triangle Publications, Inc., 442 Pa. 319, 275 A.2d 53 (1971); Greenberg v. Aetna Insurance Co., 427 Pa. 511, A.2d 576 (1967), cert den. sub nom. Scarselletti v. Aetna Cas. and Sur. Co., 392 U.S. 907 (1968). See also Restatement (Second) of Torts §§586-587 (1977). Statements by counsel relating to judicial proceedings are included in the protection of absolute privilege in order that counsel be given freedom to best represent their clients' interest. Binder, supra. See also Prosser, Torts §109 (3d ed 1964). An absolute privilege cannot be destroyed even upon a showing of legal malice. Even if the communication was made intentionally without just cause or with wanton disregard of another's rights, an absolutely privileged communication is not actionable as libel. Corabi, supra.

The statement at issue in this case was made by an attorney during settlement discussions concerning ongoing litigation. Once the underlying lawsuits between the parties were initiated, the settlement discussions were entitled to as much protection as any other stage of a judicial proceeding. The absolute privilege accorded to Mr. Wapner's letter, if recognized as a communication relating to a judicial proceeding, could not be destroyed even if the remarks had been made with actual malice.

Plaintiff contends that the statement at issue should not be accorded the absolute privilege given

to judicial proceedings, since it was not made in the pleadings or in open court. However, even if settlement discussions are somehow viewed as being outside the absolute privilege normally accorded to all stages of a judicial proceeding as Plaintiff argues, Mr. Wapner's statement would nevertheless still be protected by a conditional privilege. Conditionally privileged occasions arise when

(1) some interest of the person who publishes defamatory matter is involved;

(2) some interest of the person to whom the matter is published or some third person is involved; or

(3) a recognized interest of the public is involved. Beckman v. Dunn, 419 A.2d at 588. Communications lose their conditional privilege if made with malice. Communications retain their conditional privilege if "made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause." Id. at 587.

Settlement discussions involve strong interests of all concerned. It is in the interest of the parties to amicably resolve their disputes without protracted litigation and extensive court costs. It is in the public interest to encourage private settlement in order to conserve judicial resources and effort.

Mr. Wapner's letter was written in the course of settlement negotiations for the purpose of protecting the interests involved. It was made in a proper manner from one attorney to another. It was based on an honest judgment by Mr. Wapner of the status of the settlement discussions as it then stood. Under either an absolute privilege accorded to judicial proceedings or a qualified privilege based on the circumstances, the statement at issue is protected from an action for defamation.

Lastly, even if the statement at issue was libelous and not protected by any recognized privilege,

Plaintiff would still not be entitled to recovery, since he has failed to prove any special damages. Pennsylvania courts have held that even in libel actions, unless statements are actionable per se, proof of special damages are required. Baird v. Dun & Bradstreet, 446 Pa. 266, 285 A.2d 166 (1971); Corabi v. Curtis Publishing Co., 441 Pa. at 473 n. 25, 273 A.2d at 930, n. 25 (1971). See also Fogel v. Forbes, Inc., 500 F. Supp. 1081 (E.D. Pa. 1980). Statements which are actionable per se involve false imputation of infidelity, commission of a crime, possession of a loathsome disease, or unfitness in one's profession. See Solosko v. Paxton, 383 Pa. 419, 119 A.2d 230 (1956), aff'd on opinion below, 4 D.&C.2d 240 (1955). See also Restatement (Second) of Torts, §570 (1977).

Under the defamation statute, the plaintiff has the burden of proving "specific harm resulting to the plaintiff from (the statement's) publication" where the issue is properly raised. 42 Pa. C.S.A. §8343(a)(5). Special harm in a defamation action requires specific proof of "actual and concrete damages capable of being estimated in money, established by specific instances such as actual loss due to refusal of credit by specific persons, all expressed in figures." Fogel v. Forbes, 500 F. Supp. at 1086, quoting Altoona Clay Products v. Dun & Bradstreet, Inc. 246 F. Supp. 419, 422 (E.D. Pa. 1965) rev'd on other grounds, 367 F.2d 625 (3d Cir. 1966). Special damages must be explicitly pleaded and proved. Id.

The statement at issue does not fall into any of the categories that would be actionable per se. Plaintiff has failed to plead or prove special damages as a result of the statement at issue. Without proof of special harm, Plaintiff is precluded from recovery.

Accordingly, the order of this court granting summary judgment for defendants should be affirmed.