**Dennis BURNS**

v.

**SUPERMARKETS GENERAL CORPORATION, et al.**

**Civ. A. No. 83–6054.**

United States District Court,
E.D. Pennsylvania.

April 23, 1985.

Neil Jokelson, Philadelphia, Pa., for plaintiff.

Michael F. Kraemer, Philadelphia, Pa., for Supermarkets General Corp.

Margaret A. Browning, Philadelphia, Pa., Ira B. Silverstein, Atlantic City, N.J., for Retail, Wholesale & Dept. Store Union, Local 1034.

## MEMORANDUM

GILES, District Judge.

Dennis Burns was employed as a produce clerk at one of Supermarkets General Corporation's Pathmark stores ("Pathmark"). His duties included surveying the fruit and vegetable displays and reducing the price of produce that was no longer first quality. He was discharged by Pathmark because allegedly he was improperly reducing the price of first quality produce. The produce supervisor, Mr. McGuigan, informed the lead produce clerk, Mr. Reeser, of the discharge, reviewed with him what Burns had or had not done relative to procedures or standards for reducing the price of produce and commented that reducing merchandise improperly "is like stealing."

Mr. Burns filed a grievance consistent with the subsisting collective bargaining agreement claiming that his discharge was not for just cause. The grievance was processed in accordance with established procedures under the labor agreement. The company and union worked out a settlement proposal which the union presented to Mr. Burns. He claims that he never accepted it. The other parties contend otherwise.

Jurisdiction is founded upon diversity of citizenship. 28 U.S.C. § 1332. Plaintiff is a citizen of Pennsylvania. Pathmark is a Delaware corporation, although the Pathmark store in question is located in Philadelphia, Pennsylvania. Mr. Burns brought this action against the company claiming defamation under Pennsylvania law, breach of the collective bargaining agreement and unlawful discrimination under the National Labor Relations Act. He filed no claim against the union. However, Pathmark filed a third party action against the union alleging that if it had any legal responsibility to plaintiff under the labor agreement that the union was liable to it for indemnification or contribution because the union had breached the duty of fair representation owed to plaintiff. The union has joined in Pathmark's motion for summary judgment and has moved for summary judgment on the third party complaint asserting, by affidavit of the union attorney handling the grievance and related settlement negotiations, that the union met its duty of fair representation as a matter of law.

### A. *The Defamation Claim*

Pathmark argues that the statement, paraphrased, "Burns was discharged for improperly reducing the price of produce which is like stealing," is incapable of a defamatory meaning. Assuming that the statement is defamatory, Pathmark alternatively contends that the statement was conditionally privileged, having been uttered by one of its agents to a Pathmark employee to whom there was a duty to report the basis for the termination.

Under Pennsylvania law, a plaintiff has the burden of proving the defamatory character of the communication, its publication by the defendant, its application to the plaintiff, and the understanding by the recipient of its defamatory meaning. 42 Pa.C.S.A. § 8343(a). This court must make a preliminary determination whether the statement in question "is capable of a defamatory meaning." *Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456, 461 (1984). Only if the court finds that the statement may be understood as defamatory, is it "for the jury to determine whether it was so understood by the recipient." *Id.*, citing *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 273 A.2d 899 (1971); *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa.Super. 475, 448 A.2d 6 (1982). A communication is defamatory if it tends to harm the reputation of another and " 'to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' " *Thomas Merton Center v. Rockwell International Corp.*, 497 Pa. 460, 464, 442 A.2d 213 (1981), *cert. denied*, 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed.2d 1351 (1982), *quoting Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 303, 167 A.2d 472 (1960). The test for determining whether the communication complained of is capable of a defamatory meaning is the effect that the statement taken as a whole "would fairly produce, or the impression it would naturally engender, 'in the minds of the average persons among whom it is intended to circulate.' " *Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108, 110 (1983), *quoting, Corabi, supra*, 441 Pa. at 447, 273 A.2d 899. "[T]he nature of the audience hearing the remark [or statement] is a critical factor in considering whether" the communication is defamatory. *Beckman v. Dunn*, 276 Pa.Super. 527, 534, 419 A.2d 583 (1980).

There are two categories of defamatory words, those which are actionable, *per se*, on their face without need of extrinsic proof, and those which are actionable *per quod*, that is, words that by surrounding circumstances can be shown to be slanderous. *Mumma v. Pomeroy's Inc.*, 38 D. & C.2d 594, 596–97 (1965).[1] In this case, the communication in question is alleged to have accused plaintiff of the crime of stealing. To be actionable the statement must impute directly or indirectly the commission of a criminal offense chargeable by indictment and punishable by imprisonment. *See Williams v. Kroger Grocery & Baking Co.*, 337 Pa. 17, 10 A.2d 8 (1940); *Grund v. Bethlehem Globe Pub. Co.*, 23 D. & C.3d 371, 377 (1982); *Mumma, supra*, 38 D. & C.2d at 597. Certainly, a statement that one is a thief is actionable *per se*.

Here, there was no statement that plaintiff was guilty of stealing produce. Therefore, the issue becomes whether under the circumstances the statement "reducing the price of good produce improperly is like stealing" is reasonably capable of being understood as an imputation of the commission of a crime. It seems rather unreasonable for anyone to interpret a statement that a produce clerk's mistake of judgment in not following established store procedures for merchandise price reduction equates to actual stealing by him from the store. However, plaintiff has produced evidence of at least one person, Mr. Reeser, who claims that he interpreted Mr. McGuigan's statement in just such a manner. Mr. Reeser stated in his deposition that he "understood it as they were saying that he was stealing." (Reeser Dep. N.T. 30). He also answered the question, "[d]id you hear anybody accuse Dennis Burns of stealing?" in the affirmative. Upon further questioning it became clear that Mr. Reeser was referring to the allegedly defamatory remark. Mr. Reeser also testified at his deposition that he told his family and friends that Mr. McGuigan had said that what

---

1. The requirement enunciated in *Mumma* that a plaintiff must prove special damages or harm in order to recover in a libel action was recently overruled in *Agriss, supra*, 483 A.2d at 474. Nevertheless, this overruling did not affect the fact that Pennsylvania courts recognize two categories of defamatory expressions—those which are defamatory on their face and those which are found to be defamatory through extrinsic facts and evidence.

plaintiff did was just like stealing because "the man [Burns] was fired for stealing, and he wasn't stealing." (Reeser Dep. N.T. 33).

Nevertheless, under Pennsylvania law, Mr. Reeser's reiteration of Mr. McGuigan's communication is insufficient to establish defamation. Pennsylvania has adopted the relevant sections of the Restatement (Second) of Torts. *Redco Corp. v. CBS, Inc., et al.*, 758 F.2d 970, 971 (3d Cir.1985); *see Braig v. Field Communications*, 310 Pa. Super. 569, 456 A.2d 1366, 1372–73 (1983). Under Restatement (Second) of Torts § 566 "[a] defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed facts as the basis for the opinion." As the Third Circuit explained:

> Although there may be no such thing as a false opinion, an opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea. If the disclosed facts are true and the opinion is defamatory, a listener may choose to accept or reject it on the basis of an independent evaluation of the facts. However, if an opinion is stated in a manner that implies that it draws upon unstated facts for its basis, the listener is unable to make an evaluation of the soundness of the opinion. In such circumstances, if the underlying facts are false, the Constitution does not protect the opinion.

*Redco Corp., supra*, 758 F.2d at 972. Here, Mr. Reeser knew that plaintiff was suspended and then terminated for reducing merchandise improperly. (Reeser Dep. N.T. 30). The reason for plaintiff's suspension was made known to Mr. Reeser by Mr. McGuigan, the utterer of the allegedly defamatory statement. (Reeser Dep. N.T. 27). Mr. Reeser also knew that plaintiff had not stolen anything. (Reeser Dep. N.T. 30). Mr. McGuigan, in stating that reducing merchandise improperly is like stealing, was simply expressing his opinion. Mr. Reeser, having been given the underlying facts, was able to draw his own conclusion:

It wasn't just like stealing. Stealing is when you put something in your pocket, and you walk out of the store. Putting merchandise in the bag, and putting a price right on it, and customers are coming in and buying it up—they consider stealing, as I know the way they were looking at it, was completely wrong. They were just looking at it, because there was good merchandise in the bags, and the company is losing money, you know. And that wasn't stealing. The man was just doing what he thought was right.

(Reeser Dep. N.T. 34).

 Even if it is assumed that Mr. McGuigan's statement was defamatory, a conditional privilege attaches which defeats plaintiff's defamation claim. A conditional privilege applies " 'when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.' " *Beckman, supra*, 276 Pa.Super. at 536, 419 A.2d 583, *quoting Rankin v. Phillippe*, 206 Pa.Super. 27, 30, 211 A.2d 56, 58 (1965) (citation omitted). To be privileged, the communication must be "made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause." *Id., citing Baird v. Dun & Bradstreet, Inc.*, 446 Pa. 266, 285 A.2d 166 (1971); *Dempsky v. Double*, 386 Pa. 542, 126 A.2d 915 (1956). There are three proper occasions which give rise to a conditional privilege: when "(1) some interest of the person who publishes defamatory matter is involved; (2) some interest of the person to whom the matter is published or some other third person is involved; or (3) a recognized interest of the public is involved." *Beckman, supra*, 276 Pa.Super. at 536, 419 A.2d 583, *citing Keddie v. Pennsylvania State University*, 412 F.Supp. 1264, 1277 n. 7 (M.D.Pa.1976); *MacRae v. Afro-American Co.*, 172 F.Supp. 184 (E.D.Pa.1959), *aff'd*, 274 F.2d 287 (3d Cir.1960). Mr. Reeser held a position which required management to inform him of the reasons for

discipline of employees within his department. (Reeser Dep. N.T. 17, 45–46). He therefore had a direct interest in the matter. Thus the motive for telling Reeser of the suspension was proper and the statement was made on a proper occasion. The manner in which Mr. Reeser was informed of the suspension was proper as well. Mr. McGuigan's statement was, as previously discussed, a matter of his opinion and was stated by him only to those who had a need to know of why plaintiff was being suspended.

A conditional privilege can be defeated by a showing that the privilege was abused. Abuse can be shown:

> when the publication is actuated by malice or negligence, . . . is made for a purpose other than that for which the privilege is given, . . . or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, . . . or includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

*Beckman, supra,* 276 Pa.Super. at 537, 419 A.2d 583 (citations and footnote omitted). Plaintiff has not shown abuse of this privilege by defendant. There is no evidence that management employees communicated the alleged defamatory statement beyond the privileged disciplinary discussions among interested persons. Mr. Reeser stated that he told plaintiff that what he was doing (reducing good produce improperly) was said to be like stealing and that he may have told friends and members of his family (Reeser Dep. N.T. 33). He told no one that plaintiff had stolen but rather that, contrary to the company's analogy to stealing, plaintiff had not stolen anything. He repeated the statement to emphasize that plaintiff's only mistake in judgment was reducing the price of good produce improperly. (Reeser Dep. N.T. 33). Accordingly, for this separate reason, the plaintiff's defamation action fails. 42 Pa.C. S.A. § 8343(a)(7).

## B. *The Section 301 Claim*

Plaintiff claims that the employer breached the collective bargaining agreement by discharging him for improperly reducing the price of produce. He chose not to sue the union for breach of the duty of fair representation. In order for a union member to maintain an action against the employer, he must show that the union breached a duty of fair representation in the handling of the employee's grievance. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). This requirement is to ensure that the employee does not circumvent established grievance resolution mechanisms of collectively bargained agreements or attempt to circumvent the agency of the union by trying to deal directly with management. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

Plaintiff contends that the failure of the union to take his grievance to arbitration was arbitrary. The union, by affidavit of its attorney, contends that while its initial decision was to demand arbitration, it subsequently entered into negotiations with the company which resulted in a settlement of the grievance. The union and company reached an agreement, which was to become final if approved by plaintiff. The union contends that the final settlement of the grievance provided plaintiff with a greater sum of unemployment compensation, back pay and damages than he could have received had the grievance been pursued to arbitration. The plaintiff's acceptance of the settlement was communicated to the company. It appears that the plaintiff had obtained another job while the negotiations were ongoing and as of the time he allegedly approved the settlement in a conversation with the union attorney. Therefore, reinstatement at Pathmark was not part of the settlement package. He apparently lost that position prior to the date in August 1983 when the settlement check and release were presented to him, the latter for his signature. The union concluded that the settlement as proferred to Mr. Burns was fair, reasonable and war-

ranted his acceptance in lieu of arbitration. The union maintains that there was a settlement binding upon Mr. Burns and the company. The union claims that it learned that plaintiff's new job had fallen through at a date considerably after this lawsuit was brought.

Because it appears that the final settlement was contingent upon the plaintiff executing a release and, in declining to do so, he rejected the offer, it cannot be said that there was an agreement binding upon plaintiff. However, the employer cannot at this stage be found to have breached the labor contract. Pathmark would have proceeded to arbitration upon the union's demand but was specifically informed by the union that there was a settlement, plaintiff having verbally agreed to the same. Further, the company was led by the union to believe that the settlement offer should be continued indefinitely so that plaintiff could accept it should he have a change of heart. This is evidenced by Ms. Browning's letter of May 8, 1984, directed to the company accompanying the return of the checks for safekeeping but clarifying that their return would not in any way affect the settlement agreement reached.

The court having now determined that there was no settlement by and between plaintiff, the company and the union, the union must now be given the opportunity to demand arbitration under the labor agreement or to explain why it exercises its judgment not to do so. In view of the settlement discussions that were had and tentative agreement reached on plaintiff's behalf by the union, it cannot be said on this record that the union acted arbitrarily in its representation of plaintiff. Thus, the requisite showing of exhaustion of internal contractual remedies that must be made before this court can consider plaintiff's § 301 claim is lacking. Accordingly, the section 301 action shall be dismissed without prejudice.

C. *The Unfair Labor Practice Claim*

■ The National Labor Relations Board has exclusive jurisdiction of this claim and it must be dismissed here for lack of subject matter jurisdiction.

An appropriate order follows.

ORDER

AND NOW, this 23rd day of April, 1985, for the reasons stated in the accompanying memorandum, it is hereby ORDERED that:

1. Pathmark's motion for summary judgment is GRANTED as to plaintiff's defamation claim.

2. The § 301 claims by plaintiff against Pathmark and by Pathmark against the union are DISMISSED for lack of subject matter jurisdiction. The parties are directed to exhaust the grievance and/or arbitration provisions of the collective bargaining agreement.

3. Plaintiff's unfair labor practice claim is DISMISSED for lack of subject matter jurisdiction.