J-A28001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JASON BANONIS, THOMAS CAROCCI, JENNIFER ZAVACKY AND "ZAVACKY CAROCCI BANONIS FOR LOWER SAUCON COUNCIL" | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | No. 1545 EDA 2022 |
| THOMAS RONEY, VICTORIA ORTHOF-CORDARO, GEORGE GRESS, DEMOCRATS FOR LOWER SAUCON TOWNSHIP AND JOHN DOES 1 THROUGH 10 | : : : : : | |

Appeal from the Order Entered May 16, 2022
In the Court of Common Pleas of Northampton County Civil Division at
No(s): C-48-CV-2021-08193

BEFORE: PANELLA, P.J., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED MAY 1, 2023**

Jason Banonis ("Banonis"), Thomas Carocci ("Carocci"), Jennifer Zavacky ("Zavacky"), and "Zavacky Carocci Banonis for Lower Saucon Council" (collectively, "Appellants") appeal the order sustaining preliminary objections in the form of a demurrer and dismissing their complaint asserting defamation by Thomas Roney, George Gress, Victoria Orthof-Cordaro, "Democrats for Lower Saucon Township,"[1] and John Does 1 Through 10 (collectively, "Appellees"). We reverse and remand.

---

[1] Appellant's notice of appeal and brief misidentify this party as "Lower Saucon Township," instead of "Democrats for Lower Saucon Township," the actual party identified below. Accordingly, we have corrected the caption of this appeal.

On October 29, 2021, Appellants filed a complaint ("Complaint"). The relevant averments of the Complaint are as follows. In October 2021, Appellants, then-candidates in the November 2021 election for Lower Saucon Township Council, discovered that Appellees had circulated, in writing and on social media, a written communication ("the Communication") addressed to "Dear Lower Saucon Township Voter" that made the false assertion that "Our opponents [Appellants] have pledged to refuse the $3,250/year council salary, BUT they gladly accepted more than $75,000 in support from the landfill PAC and other developers in this election." *See* Complaint, 10/29/21, at ¶¶ 1-9, 13, 16 (emphasis in original).

Appellants also aver that they discovered the following statements on the donation section of Democrats for Lower Saucon Township's website:

> a. Make no mistake, our opposition is well funded and organized with the help of wealthy conservative voters and unlimited resources from the landfill.
>
> b. In fact, the landfill has its own super [PAC] which has funneled $95,000.00 into Lower Saucon Council races to support candidates who do not oppose their expansion efforts.
>
> c. We have no doubt the landfill will pump as much money as requested to keep the current council members in place.
>
> d. Together we can make a difference in Lower Saucon and send a message that big corporate landfill money can't buy our beautiful Township.

*See id*. at ¶ 18. (quotation marks omitted). The Complaint avers that: Appellees "published, disseminated, and communicated the Communication and Donate Page to individuals in the Township of Lower Saucon and,

specifically, to Lower Saucon Township voters," *id*. at 23; the Democrats for Lower Saucon Township's ("the Committee's") website "directs checks to be mailed to 'Democrats for LST' and is signed 'Respectfully, Georgia, Victoria, and Tom'" [Appellees Roney, Gress, and Orthof-Cordaro's first names], *id*. at ¶ 19, and "the patently false, misleading and defamatory Communication and/or Donate Page were shared by one or more of the [Appellees] with one or more local media outlet. . .." *Id*. at 24.

The Complaint further avers that Appellees' "false and defamatory statement were [sic] intended to cause, and did cause, great injury . . .." *Id*. at ¶ 26. The Complaint also avers that Appellees did not take steps to investigate the accuracy of their statements and acted in reckless disregard of the truth or falsity of those statement:

> 27. [Appellees] failed and/or refused to conduct any investigation to determine the accuracy of their statements prior to publishing or communicate the Donate Page contents or the Communication.
>
> 28. In fact, [Appellants'] Campaign Finance Reports, filed with the County Board of Elections as required by Pennsylvania Campaign Finance Law and available to the public, clearly revealed that [Appellants] did not receive any donations from the landfill PAC or other developers. . . .
>
> 29. [Appellants'] publicly-available Campaign Finance Reports clearly reveal that [Appellants] did not receive more than Twenty Thousand ($20,000.00) Dollars in donations in total for the Election.
>
> 30. Furthermore, [Appellants'] publicly-available Campaign Finance Reports clearly reveal that [Appellants] did not receive Seventy-five Thousand ($75,000.00) Dollars (or Ninety-five Thousand ($95,000.00) Dollars) in support from the landfill PAC and other developers, or from anyone for that matter.

31. Assuming *arguendo* that [Appellees] purportedly conducted an investigation, the same was not thorough, complete, or designed to determine the accuracy or truthfulness of [Appellees'] statements prior to publishing or communicating the contents of the Donate Page or Communication.

32. [Appellees] could easily have accessed [Appellants'] filed and publicly-available Campaign Finance Reports to ascertain the falsity of their statements, but failed to do so.

\* \* \* \*

35. [Appellees] knew or should have known that the statements set forth in their Communication and Donate Page were false.

36. [Appellants] acted in reckless disregard of the truth or falsity of their statements which were communicated and published on their Donate Page and in their Communication.

37. For the reasons set forth above, [Appellees] acted recklessly, intentionally, and/or maliciously in publishing or communicating false and defamatory statements regarding [Appellants].

*Id*. at ¶¶ 27-32, 35-37.

The Complaint also avers in the alternative that Appellee's Communication and Donate page constituted defamation *per se*. **See id**. at 38. Finally, the Complaints avers that Appellants sent cease and desist letters to Appellees upon learning of the communications and that Appellee Thomas Roney later contacted Banonis's employer and republished the defamatory statements. **See** Complaint, 10/29/21, at ¶¶ at 42, 44-45.

Appellants filed an emergency petition for special relief and preliminary injunction on the same day as their Complaint. Appellees filed preliminary objections to the Complaint. In May 2022, the trial court heard argument and

sustained preliminary objections in the nature of a demurrer. The trial court found that the challenged statements constituted permissible political speech; Appellants failed to show that Appellees' statements were defamatory or made with actual malice; and Appellees adequately showed that the Committee's statements were neither false nor made with reckless disregard of their truthfulness. *See* Trial Court Opinion, 5/16/22, at 2. The trial court dismissed Appellants' complaint with prejudice.

Appellants timely appealed and both they and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellants present the following issues for our review:

A. Whether [the] [t]rial [c]ourt erred in failing to apply the appropriate standard for preliminary objections in the nature of a demurrer and dismissed Appellants' Complaint with prejudice and without leave to amend?

B. Whether the [t]rial [c]ourt committed errors of law and abused its discretion by dismissing the action and finding no legally permissible recovery based on the facts asserted in the Complaint?

C. Whether the [t]rial [c]ourt erred in making findings of fact at the pleading stage before any discovery occurred?

Appellants' Brief at 5 (underlining omitted).

All three of Appellants' issues implicate the standards of review applicable to an order sustaining preliminary objections in the form of a demurer in a defamation case and the trial court's application of those standards. We address Appellants' three claims together.

The standards governing our review of an order sustaining preliminary objections in the nature of a demurrer are well-settled:

> On appeal, we exercise *de novo* review of a lower tribunal's order sustaining preliminary objections in the nature of a demurer. A demurrer tests the legal sufficiency of a complaint. For the purpose of evaluating the legal sufficiency of the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 908-09 (Pa. 2019) (quotation marks and internal citations omitted). Our scope of review is limited to the averments in the complaint together with the attached documents and exhibits. *See Hill v. Ofalt*, 85 A.3d 540, 547 (Pa. Super. 2014). A court should not grant a demurrer even if it appears that a party may not be able to prove its case at trial. *See Webb Mfg. Co. v. Sinoff*, 674 A.2d 723, 728 (Pa. Super. 1996).

A plaintiff pursuing a common law claim of defamation must prove the following elements:

(1) the defamatory character of the communication;

(2) publication by the defendant;

(3) its application to the plaintiff;

(4) understanding by the recipient of its defamatory meaning;

(5) understanding by the recipient of it as intended to be applied to the plaintiff;

(6)    special harm to the plaintiff; and

(7)    abuse of a conditionally privileged occasion.

*Miketic v. Baron*, 675 A.2d 324, 327 (Pa. Super. 1996) (spacing added) (footnote omitted).  Harm from defamation includes impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974); *Pilchesky v. Gatelli*, 12 A.3d 430, 444 (Pa. Super. 2011).

Where the person alleging defamation is a public figure, he or she must prove "actual malice," *i.e.*, that the challenged statement is made with knowledge that it is false or reckless disregard of whether it is false or not. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).  To plead actual malice, a plaintiff must assert that the speaker, at a minimum, entertained serious doubts about the truth of the publication or acted with a high degree of awareness of its probable falsity.  *See American Future Sys. Inc. v. Better Bus. Bureau*, 923 A.2d 389, 395 n.6 (Pa. Super. 2007).

It is for the trial court to determine, viewing a statement in context, if it can be construed to have the defamatory meaning the complaining party ascribes to it.  *See Baker v. Lafayette College*, 532 A.2d 399, 402 (Pa. 1987).  A court should not sustain preliminary objections in the form of a demurrer in a defamation case unless it is clear that the communication is incapable of defamatory meaning.  *See Gordon v. Lancaster Osteopathic Hosp. Ass'n Inc.*, 489 A.2d 1364, 1368 (Pa. Super. 1985).  Where any doubt

exists about the defamatory nature of a communication, the issue is for the jury. *See id*. (further stating that "[e]ven where a plausible innocent interpretation of the communication exists, if there is an alternative defamatory interpretation, the issue must proceed to the jury.").

A communication is defamatory if it tends to denigrate a person's reputation and lower him in the estimation of the community, deter third persons from associating or dealing with him, or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession. *See Constantakis v. Bryan Advisory Services, LLC*, 275 A.3d 998, 1023 (Pa. Super. 2022). Thus, in *MacElree v. Philadelphia Newspapers, Inc.*, 674 A.2d 1050 (Pa. 1996), the Supreme Court reversed the grant of a demurrer in a public figure's defamation suit predicated on statements that he was "electioneering" and "the David Duke of Chester County running for office by attacking Lincoln [University]."[2] *Id*. at 1052. The *MacElree* Court held that the challenged statement would permit a reasonable person to conclude that the statement accused MacElree of "abusing his power as the district attorney, an elected official, to further racism and his own political aspirations," and that such an accusation amounted to a charge of misconduct in office. *See id*. at 1054; *see also Smith v. Wagner*, 588 A.2d 1308, 1311 (Pa. Super. 1991)

---

[2] David Duke is an American white supremacist, antisemitic conspiracy theorist, far-right politician, and former Grand Wizard of the Knights of the Ku Klux Klan. *See* Reed, Julia, "His Brilliant Career," The New York Review of Books (April 9, 1992).

(holding that a statement that a public figure is a liar, a thief, and a crook states a cause of action for defamation and compels the reversal of the grant of a demurrer); **Reed v. Pray**, 53 A.3d 134, 137, 141-42 (Pa. Cmwlth. 2012) (reversing grant of summary judgment to: (1) council members who stated to voters at a polling station on Election Day that a local elected official "took $100,000" from the Borough, and (2) a council member who shouted statements at a retail store that the official took $200,000 from the Borough).[3]

Appellants allege that the trial court erred, *inter alia*, by failing to accept the averments in the Complaint as true, engaging in fact-finding, and determining that Appellees' communications were not capable of defamatory meaning. Appellants also contend that Appellees' communications expressly or impliedly represented that they (1) accepted $75,000 from the landfill PAC and other developers, (2) were "bought off" or bribed by the landfill or other developers, (3) were beholden to the landfill and other developers, (4) would disregard and lacked concern for Lower Saucon Township residents best interests in favor of campaign donors, (5) did not act with integrity, and (6) used their positions as council members to act in their own self-interest to the detriment of the Township and its residents.

---

[3] This Court is not bound by the decisions of the Commonwealth Court but such decisions provide persuasive authority, and we may turn to them for guidance when appropriate. **See Petow v. Warehime**, 996 A.2d 1083, 1089 n.1 (Pa. Super. 2010).

The trial court found that Appellants failed to allege facts that could permit recovery for defamation. *See* Trial Court Opinion, 8/5/22, at 2, citing *Unglow v. Zubik*, 29 A.3d 810 (Pa. Super. 2010). The court declared that Appellants are public figures who are required to establish actual malice, and that:

> [i]t is clear that the statements in questions constitute permissible public speech and [Appellants] failed to show that such statements were defamatory or made with actual malice. [Appellees] have adequately shown that statements about the political action committee were not false or made with reckless disregard as to their truthfulness.

*Id*. at 2-3. The trial court asserted that the First Amendment is due the fullest and most urgent application in the conduct of campaigns for public office. *See id*. at 3, citing *Monitor Patriot Co. v. Roy*, 401 U.S. 262 (1971). The trial court specifically found that the communication that Appellants "gladly accepted more than $75,000 in support from the landfill PAC and other developers in this election," could not reasonably be read as defamatory or made with malice in the context of a political campaign and did not assert illegal conduct. *See id*. at 4. The court found that a "reasonable reading" of the communication did not lead to a finding of defamation or malice. *See id*. at 5. The trial court's assertion constitutes fact-finding that is in direct contravention of the applicable standard of review for a trial court's consideration of preliminary objections which requires a court to accept the truth of the facts asserted and every inference that is fairly deducible from those facts, and does not authorize a court to offer its own "reasonable

reading." ***See Commonwealth by Shapiro***, 208 A.3d at 908-09 (internal citation omitted) (stating that the legal standard of review requires a court to accept as true all well-pleaded, material, and relevant facts the Complaint avers).

After a thorough review of the record and the applicable standard of review, it is clear that the trial court committed reversible error by sustaining preliminary objections in the form of a demurrer. The Complaint averred, *inter alia*, the falsity of the allegation that Appellants "gladly accepted more than $75,000 in support from the landfill PAC and other developers in this election," and also that publicly-available records demonstrated that Appellees' communication was false, easily discoverable to be false, and either false or made with reckless disregard of their truthfulness. ***See*** Complaint, 10/29/21, at ¶¶ 13, 22, 28-32, 35-37. The trial court's finding that Appellees "have adequately shown that statements about the political action committee were not false or made with reckless disregard as to their truthfulness," ***see*** Trial Court Opinion, 8/5/22, at 2-3, constituted both a failure to accept the well-pleaded facts as true and an improper factual finding in Appellees' favor. Because the legal standard of review required the trial court to accept all facts averred and all reasonable inferences therefrom in reviewing the Complaint, and because the facts averred and the reasonable inferences therefrom pled defamation, the trial court erred in granting Appellee's preliminary objections.

*See Commonwealth by Shapiro*, 208 A.3d at 908-09; *Webb Mfg. Co.*, 674 A.2d at 728.

The trial court also erred when it found that there could be no recovery because Appellants failed to show the defamatory quality of the statements. *See* Trial Court Opinion, 8/5/22, at 2-3. Again, the applicable standard of review required the trial court to accept as true that Appellees had communicated to potential voters that, *inter alia,* Appellants had accepted more than $75,000 from a landfill PAC and other developers and that Appellants would act in their own self-interest to the detriment of the residents of Lower Saucon Township because of their receipt of that money. The standard of review also required the court to allow the case to proceed unless it was clear that the communications were "***incapable*** of bearing a defamatory meaning," despite the possibility of an innocent interpretation. *Gordon*, 489 A.2d at 1368 (emphasis added).

Applying *de novo* review to the lower tribunal's order, the Complaint sufficiently averred that Appellees' communications, published in print and on a website, were capable of at least some of the defamatory meaning Appellants ascribe to them. The Complaint avers that Appellants accepted a large sum of money from a special interest group; the special interest group would spend as much money as requested to keep current council members,

Appellants,[4] in place; and that Appellants would, without integrity, use their positions as council members in the interest of the landfill and to the detriment of the Township.  Those allegations are capable of a defamatory reading.  **See MacElree**, 674 A.2d at 1054; **Reed**, 53 A.2d at 137, 141-42.[5]  The applicable standard is not, as the trial court stated, whether the communications are susceptible of a "reasonable reading" that they do not constitute defamation but whether they are susceptible of a defamatory interpretation that would require the issue to proceed to a jury.  **See Gordon**, 489 A.2d at 1368.  At the demurrer stage, a defamatory interpretation exists namely that Appellees took a large sum of money from a special interest group and would promote those interests to the detriment of the Township.[6]  Further, the Complaint's

---

[4] Two of the three Appellants were on the current council seeking reelection; the third was running for office with them.

[5] For the purposes of this memorandum, we do not decide whether the communications constitute accusations of criminal conduct and therefore constitute defamation *per se*.  We note only that to the extent the trial court suggested that the communications could not be defamatory if they did not allege criminal conduct, **see** Trial Court Opinion, 8/5/22, at 4, the court was incorrect.

[6] Appellees assert that they never said that Appellants directly received financial contributions from the landfill PAC or other developers; at most, they asserted that Appellants received "support" from the landfill PAC.  **See** Appellees' Brief at 16.  In fact, the Complaint avers that Appellees stated that Appellants gladly accepted more than $75,000 from a landfill PAC and other developers.  Appellees also assert that as public figures, Appellants "must plead that they did not receive ANY support, direct or indirect, from the landfill PAC or any other developers," **see id**. at 17, and further argue that developers did contribute to Appellants' campaign.  **See id**.  Appellees cite no authority,
*(Footnote Continued Next Page)*

averments that Appellants' "Campaign Finance Reports, filed with the County Board of Elections . . . and available to the public, clearly revealed that [Appellants] did not receive any donations from the landfill PAC or other developers," Complaint, 10/29/21, at ¶ 28; Appellees "knew or should have known that the statements set forth in their Communication and Donate page were false, *id*. at ¶ 35; and Appellees "acted in reckless disregard of the truth or falsity of their statements," *id*. at ¶36, satisfied the pleading standard for actual malice. *See American Future Sys. Inc.*, 923 A.2d at 395 n.6. The trial court therefore erred as a matter of law by sustaining preliminary objections in the form of a demurrer.[7]

Appellants' additional assertions allege facts that are sufficient to establish the other elements of defamation, namely that recipients of the communications would recognize their defamatory meaning and its application to Appellants, the existence of special harm,[8] and the abuse of a conditionally

---

nor are we aware of any, for the proposition that their alleged statements could not be defamatory if Appellants received *any* support from the landfill PAC or other developers.

[7] *Monitor Patriot Co. v. Roy*, 401 U.S. 262 (1971), which the trial court cites, does not support the trial court's ruling. Although *Monitor Patriot Co*. recognized the need for fulsome political debate, it reversed a judgment in favor of media defendants who characterized a senatorial candidate as a "former small-time bootlegger."

[8] Pennsylvania holds that proof of special harm, *i.e.*, monetary damages, is not a prerequisite to recovery in a defamation libel case. *See Joseph v. Scranton Times, L.P.*, 129 A.3d 404, 429 n. 10 (Pa. 2015).

privileged occasion.[9] The trial court did not find that the Complaint's factual averments concerning those elements were deficient, nor do Appellees make that assertion.[10]

Under the standard that applies to the review of preliminary objections, Appellants' Complaint sufficiently alleged facts that, if true, are capable of establishing actual malice. The trial court therefore erred as a matter of law in sustaining Appellees' preliminary objections to Appellant's Complaint asserting defamation.

Order reversed. Case remanded. Jurisdiction relinquished.

---

[9] Communications are privileged when made on a proper occasion, from a proper motive, and in a proper manner, such as when circumstances "lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know." *See Maier*, 671 A.2d at 706. Abuse of a conditional privilege occurs when the publication is actuated by malice, *see Beckman v. Dunn*, 419 A.2d 583, 588 (Pa. Super. 1980) or is distributed to unauthorized persons. *See Forbes v. King Shooters Supply*, 230 A.3d 1181, 1188 (Pa. Super. 2020).

[10] Even had the trial court not erred by engaging in impermissible fact-finding, its dismissal of the Complaint with prejudice would still constitute error because the court failed to offer Appellants the opportunity to amend their Complaint. *See Connor v. Allegheny General Hosp.*, 461 A.2d 600, 602 (Pa. 1983) (stating that the right to amend should be liberally granted and holding that the lower court abused its discretion by failing to grant the right to amendment where it would not have prejudiced the appellee).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2023