**Richard A. SPRAGUE, Plaintiff,**

v.

**AMERICAN BAR ASSOCIATION, ABA Journal, and Terry P. Carter, Defendants.**

**No. CIV.A. 01–382.**

United States District Court, E.D. Pennsylvania.

July 31, 2003.

Barbara R. Axelrod, James E. Beasley, The Beasley Firm, Philadelphia, PA, for Plaintiff.

David E. Abernathy, Drinker, Biddle & Reath, LLP, Philadelphia, PA, David H. Marion, Joyce S. Meyers, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Defendants.

Joyce S. Meyers, Michael K. Twersky, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for Movant.

### Memorandum and Order

YOHN, District Judge.

Plaintiff, Richard Sprague, is suing defendants, the American Bar Association ("ABA"), the ABA Journal ("Journal"), and journalist Terry P. Carter ("Carter"), for defamation. Currently pending before the court are defendants' two combined motions for summary judgment, under Federal Rule of Civil Procedure 56(b), on the issue of damages. Specifically, defendants move for summary judgment on the issues of (1) the compensatory damages for reputational and emotional harm and (2) punitive damages. Because genuine issues of material fact exist regarding both of these

issues, I will deny both of defendants' motions for summary judgment.

## BACKGROUND

The following relevant material facts are not disputed. The October 2000 edition of the Journal contained an article, authored by defendant Carter, that discussed plaintiff, who is a prominent Philadelphia attorney. Mot. for Sum. J. on Pun. Dam, Ex. A ("Cops in the Crossfire"). Within this article, defendants referred to plaintiff as "perhaps the most powerful lawyer-cum-fixer in the state." [1]

In response to this article, on January 11, 2001, plaintiff filed an action for defamation in the Court of Common Pleas of Philadelphia County, which defendants promptly removed to the Eastern District of Pennsylvania on January 25, 2001. Notice of Removal (Doc. 1). Plaintiff asserts that defendants' use of the term "fixer" constituted defamation because it implied that he secured favorable judicial decisions through illegal means. [2] Oppos. to Sum J. on Pun. Dam, at 19. He further avers that as a result of this reference to him, he has suffered harm to his reputation, as well as emotional harm. [3] Compl., ¶ 44. Consequently, plaintiff requests compensatory and punitive damages. *Id.* at 8.

Thus far, this court has entered three rulings as to plaintiff's cause of action. The court determined, as a matter of law, that the term "lawyer-cum-fixer" as employed in defendants' article was capable of two meanings: one defamatory, the other not. Memorandum and Order, at *4 (Yohn, J., Nov. 14, 2001). In addition, the court approved the stipulation of the parties that plaintiff "is held to be a limited public figure as a matter of law for purposes of this defamation action." Order (Yohn, J., April 1, 2002). Finally, this court held that there are genuine issues of material fact as to whether defendants acted with actual malice; therefore, I denied summary judgment on that issue. Memorandum and Order (Yohn, J., July 18, 2003).

Now, defendants have moved for summary judgment on the issues of: (1) reputational and emotional harm and (2) punitive damages. The court, however, concludes that there are genuine issues of material fact as to each of these issues, and thus, summary judgment will be denied as to both motions.

## STANDARD OF REVIEW

Either party to a lawsuit may file a motion for summary judgment, and it will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 743 (3d Cir.1996) (citation omitted).

---

1. As this court has already thoroughly examined the context surrounding this labeling of plaintiff, I will not now review it here. For a detailed analysis of it, see Memorandum and Order, 2001 WL 1450606, at *4 (Yohn, J., Nov. 14, 2001).

2. In contrast, defendants aver that they intended, as indicated by the article's context, for the term to communicate plaintiff's respected stature, experience, and reputation. *Id.* at 5.

3. Specifically, plaintiff alleges "humiliation, embarrassment, mental anguish and suffering." *Id.*

In addition, "[s]ummary judgment may not be granted ... if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Ideal Dairy,* 90 F.3d at 744 (citation omitted). While the moving party bears the initial burden of showing that there is no genuine issue of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Id.* at 322, 106 S.Ct. 2548.

When a court evaluates a motion for summary judgment, "[t]he evidence of the non-movant is to be believed." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Additionally, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* At the same time, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 382 n. 12 (3d Cir.1990). The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted).

## DISCUSSION

■ Defamation is a state law claim that is replete with First Amendment limitations. *Marcone v. Penthouse International Magazine,* 754 F.2d 1072, 1077 (3d Cir.1985); *Dun & Bradstreet Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 755–756, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). Consequently, "[a]n adjudication of a defamation case involves both state and federal law inquiries." *Marcone,* 754 F.2d at 1078. The issue of defamation damages is no exception. Accordingly, in resolving defendants' motions for summary judgment, the court must consider both domains.

## I. Compensatory Damages

■ There are two major categories of compensatory damages relevant to a defamation claim: "presumed" and "actual." "Presumed" damages are those that are expected to result from defamation; they require no proof, but instead, as reflected in their name, are presumed under the law. In contrast, actual damages require competent proof. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). "Actual" damages are further divided into two types: general and special. "General" damages refer to those that typically flow from defamation, such as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Marcone,* at 1079 (citing *Gertz* at 350, 94 S.Ct. 2997); *see also Walker v. Grand Central Sanitation, Inc.,* 430 Pa.Super. 236, 634 A.2d 237, 243–44 (1993) (measuring whether plaintiff suffered loss of reputation or "adverse emotional reaction" to determine general actual damages); Restatement (Second) of Torts §§ 621, 623 ("One who is liable for a defamatory communication is liable for the proved, actual harm caused to the reputation of the person defamed ...[and] is liable also for emotional distress ... that is proved to have been caused by the defamatory communication."). These are distinguished from "special" actual damages which are economic or pecuniary loss-

es. *Beverly Enterprises, Inc. v. Trump,* 182 F.3d 183, 188 (3d Cir.1999); *Walker,* 634 A.2d at 245; *see* Restatement (Second) of Torts § 575, cmt. b ("Special harm, as the words are used in this Chapter [regarding defamation], is the loss of something having economic or pecuniary value.")

In the present action, plaintiff alleges that, as a result of defendants' article, he suffered general actual harm in the form of loss of reputation and emotional distress. He also contends that as a defamation plaintiff, he is entitled to presumed damages. Conversely, defendants assert that plaintiff may only recover for actual harm, not presumed, and that plaintiff has failed to present competent evidence of such harm. The court concludes, however, that plaintiff's evidence of actual harm is sufficient to require submission of this issue to a jury. Because I conclude that plaintiff has presented sufficient evidence of actual harm to survive summary judgment on the issue of compensatory damages, I need not decide at this time whether presumed damages would also be permissible.

## A. Plaintiff's Actual Harm

■ With respect to plaintiff's actual damages, defendants concede as they must that a showing of general damages is sufficient under both the First Amendment and Pennsylvania law. They argue, however, that plaintiff has not presented sufficient evidence of even general damages. Defendants do not dispute the facts upon which plaintiff relies to show actual harm; they contest the factual inferences that flow from the uncontested facts. I conclude that plaintiff has produced sufficient evidence from which a rational jury could infer plaintiff's general actual harm, thereby rendering general damages proper material for jury determination.

■ Evidence of general damages satisfies the First Amendment. As the *Gertz* Court explained, compensable actual injury in defamation cases "is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." 418 U.S. at 349–50, 94 S.Ct. 2997 [4]; *see Marcone,* 754 F.2d at 1079 (discussing *Gertz* and concluding that "proof of actual *economic* loss is not required to recover compensatory damages as a matter of federal constitutional law.") Additionally, Pennsylvania caselaw unambiguously holds that general damages are sufficient in libel cases. As the state appellate court explained in *Walker,* "all libels ... are actionable without proof of special damages." 634 A.2d at 243; *Agriss,* 483 A.2d at 473 (adopting the Restatement (Second) of Torts, § 569, which states that "[o]ne who falsely publishes matter defamatory of another in such a manner as to make the publication a libel is subject to liability to the other although no special harm results from the publication."). Recognizing the sufficiency of general damages reflects the reality that "[b]y its very nature, injury to reputation does not work its greatest mischief in the form of monetary loss." *Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456, 473 (1984).

As explicated above,[5] general damages refer to typical damages suffered from defamation, including reputational harm and emotional suffering. *Marcone,* 754 F.2d at

---

4. Although *Gertz* involved a private plaintiff, the Court's discussion of compensable defamation damages was generalized and did not differentiate among types of plaintiffs. More-over, defendants do not suggest that this distinction bears on this particular inquiry.

5. *See supra* section I, pp. 368–69.

1079 (citing *Gertz*, 418 U.S. at 350, 94 S.Ct. 2997); *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 273 A.2d 899, 919–20 (1971) (approving Restatement (First) § 621 & 623, which establish these as general damages); *Walker*, 634 A.2d at 244 (measuring whether plaintiff suffered loss of reputation or "adverse emotional reaction" to determine actual general damages); *Agriss*, 483 A.2d at 474 (defining general actual damages as "any injury done to [plaintiff's] reputation and for any other injury of which libel is the legal cause"). In determining if a plaintiff has demonstrated any loss to reputation, it must be measured by the perception of others, rather than that of the plaintiff because " 'reputation is the estimation in which one's character is held by his neighbors or associates.' Restatement, Torts § 577, comment b (1938)." *Gaetano v. Sharon Herald Co.*, 426 Pa. 179, 231 A.2d 753, 755 (1967) (quoted in *Agriss*, 483 A.2d at 473).

Plaintiff has shown evidence from which a jury could rationally infer that defendants' article adversely affected others' estimation of plaintiff's character, harmed his professional relationships, and caused, and continues to cause, him emotional distress. In their motion, defendants emphasize that all of the numerous witnesses presented by plaintiff concede that their estimations of plaintiff did not falter as a result of the article. This is an example of undisputed facts that have highly contested inferences. Although defendant is correct that numerous witnesses state that their opinion of plaintiff was not adversely affected, the *reason* given by these witnesses as to why their opinions were not changed yields a rational inference that supports a finding of actual harm to plaintiff. Plaintiff's witnesses testified that their positive opinions of him were not negatively affected simply because they knew him personally and thus did not believe the defamatory accusation; instead, they were outraged. Am. Mot. for Sum. J. on Rep. Harm, Ex. B, at 46–47 (Dep. of Baylson); Ex. C, at 7–8, 90–91 (Dep. of Lamb); Ex. D, at 13–15, 99–100 (Dep. of Abraham); Ex. E, at 30–31 (Dep. of Shestack); Ex. F, at 26–28, 36, 42 (Dep. of Specter); Ex. G, at 22–26 (Dep. of Sylvester); Ex. H, at 13–18, 25–26 (Dep. of Zimmerman); Ex. I, at 29–31 (Dep. of Tannenbaum); Ex. J, at 14 (Dep. of Curran); Ex. K, at 27–28, 53–55 (Dep. of Liacouras); Ex. L, at 39–40 (Dep. of Rogovin); Ex. N, at 14–15 (Dep. of Bowser). A rationale inference from this evidence would be that those who read the article without personal knowledge of plaintiff would have no reason to disbelieve the alleged defamation, which would possibly result in plaintiff's reputational loss. A jury might find this inference particularly powerful upon hearing that the Journal serves nearly 400,000 readers. Oppos. to Sum. J. on Pun. Dam., Ex. S.[6]

---

**6.** Defendants have submitted a supplemental filing that included an expert report and opinion regarding the extremely low likelihood of any damage to plaintiff's reputation. Supp. Br. for Sum. J. on Rep. Harm. This submission has absolutely no impact on this motion for summary judgment because, provided that plaintiff demonstrates evidence from which a jury could rationally conclude that even just one person's opinion of him was negatively affected, as I have concluded he has, then it is of no import how many multitudes of Journal readers' opinions were not so affected. Even if this expert could prove that every single person in the world except one was not so affected, summary judgment on this issue of reputational harm would have to be denied because one negatively affected opinion constitutes actual harm. The expert's evidence as to probabilities does not negate the possibility of one adversely affected opinion. Defendants' expert report and opinion is highly relevant to the amount of damages plaintiff is owed in the event that the jury finds the Journal's article defamatory; however, it is irrelevant at this summary judgment stage.

There is also evidence that plaintiff's professional relationships were adversely affected by the article. For instance, the Honorable Esther R. Sylvester, although admitting that her own opinion of plaintiff did not lessen, stated that as a result of the article, she "didn't want to call him ... didn't want to talk to him ...." *Id.*, Ex. G, at 23. She clarified that her desire not to speak with plaintiff resulted from her concern that she would be perceived by others as a judge who consorts with a lawyer who fixes cases illegally. As she explained, "it's not me that's the problem. It's the perception of everybody else in the community." *Id.* at 24. Although not evidence of reputational harm from the perspective of this particular witness's estimation of plaintiff, surely where defamation results in professional acquaintances avoiding association with plaintiff, this is "any other injury of which libel is the legal cause," which is compensable general actual harm. *Agriss*, 483 A.2d at 474.

Plaintiff also testified to his emotional suffering that resulted from defendants' alleged defamation. Defendants do not contest plaintiff's sincerity regarding his emotional harm; they instead assert that in Pennsylvania, emotional harm is not compensable in the absence of actual reputational injury. Am. Mot. for Rep. Harm, at 13. However, as illustrated above, there is evidence of actual harm to plaintiff's reputation that is proper for jury consideration. Consequently, defendants argument is moot and need not be addressed.[7]

The nature of plaintiff's alleged emotional harm is comparable to that found sufficient by the Third Circuit in the defamation case of *Marcone*, 754 F.2d at 1080. Our Court of Appeals made the following assessment of the evidence of actual harm:

> Marcone testified that he was "frustrated, distraught, upset, and distressed about the article and its effect on his family and friends ...". He also stated that he feared "retribution against his family by clients who imagined themselves the victims of his alleged cooperation" with the government. While Marcone's testimony contained some inconsistencies, it was possible for the jury to assess his credibility and determine whether he actually suffered any harm. Consequently, the evidence of harm to reputation and mental anguish, while not overwhelming, was sufficient under Pennsylvania law to permit recovery for Marcone's "actual damages" ....

*Id.*

Comparably, the plaintiff here asserted that the article has caused him, and will continue to cause him, anger, humiliation, embarrassment, and fear. Am. Mot. for Sum J. on Rep. Harm, Ex. A, at 15–19 (Dep. of Sprague).[8] Plaintiff cited instanc-

---

7. Notably, two of the three cases cited by defendants to support their position are not even on point. Am. Mot. for Sum. J. on Rep. Harm., at 13–14 (citing *Scott–Taylor, Inc. v. Stokes*, 425 Pa. 426, 229 A.2d 733 (1967), and *Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983), in which the courts do not decide this issue). The third case cited by defendants is a Pennsylvania Court of Common Pleas case that holds merely that "anger" is insufficient alone to constitute actual harm and cites no appellate support for this conclusion. *Haltzman v. Brill*, 29 Pa. D. & C. 4th 356, 364 (Pa.Ct. of Comm. Pl.1995).

8. Q. What is the nature of the emotional distress that you're claiming?

A. I am outraged, I am furious, I'm embarrassed, I'm humiliated ... I'm angry ... I am internally upset
....

Q. [I]s there anything else that you're claiming in terms of emotional distress?
....

A. The concern, the professionally—the fear that others in terms of their perception, how they then would deal with me. *Id.* at 15–18.

es of humiliation, such as when he felt obligated to inform the Attorney General and a White House representative that he was referred to as a "fixer" by the Journal when being considered for head of the Justice Department's criminal division. Suppl. Br. in Oppos. to Sum. J., Ex E., at 27–30 (Dep. of Sprague).

Plaintiff's account of his initial introduction to defendants' article further evidences emotional distress. According to plaintiff's deposition, soon after the article's publication, an unidentified individual called him at his office and when plaintiff picked up the phone, the caller stated "so, that's how you win your cases." Oppos. to Sum. J. on Pun. Dam, Ex. J, at 59 (Dep. of Sprague). Plaintiff then asked " 'who is this, what are you talking about?' The person responded, 'see the American Bar Association Journal,' and hung up." *Id.*

Additionally, plaintiff testified that his fear surfaces when he goes before judges that he has never practiced in front of because he is concerned that they might have some prejudice against him based on the Journal article. *Id.* at 30. Plaintiff asserts that his fear is constant and continuous. *Id.,* at 35. As with the *Marcone* plaintiff's evidence, most of present plaintiff's evidence is borne of his own word, which our Court of Appeals found adequate for jury consideration on the issue of emotional distress.

Plaintiff has presented inferential evidence of reputational harm, evidence of professional relationships placed in jeopardy, and emotional distress, all caused by the article. As such, rational jurors could choose the inferences that plaintiff urges them to choose, which would demonstrate actual harm and entitle him to compensatory damages.

### B. Presumed Damages

Although the First Amendment permits presumed damages for defamation against public figures, it appears that Pennsylvania law on this issue is more ambiguous. Because I have concluded that plaintiff has provided sufficient evidence of actual harm such that summary judgment on compensatory damages must be denied, I need not decide at this stage in the proceedings whether Pennsylvania law would permit plaintiff to pursue presumed damages as well.

With respect to the First Amendment, the Supreme Court has not directly addressed the scenario now before the court: whether presumed damages are available for a media defendant's libel of a public figure. At common law, presumed damages were permitted in defamation cases. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 760, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985); *Gertz,* 418 U.S. at 349, 94 S.Ct. 2997. Only one First Amendment limitation has ever been placed on presumed defamation damages. In *Gertz,* the Supreme Court held that presumed damages were not permitted absent a showing of actual malice. 418 U.S. at 349, 94 S.Ct. 2997 (holding that states "may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth"); *see Marcone v. Penthouse International Magazine for Men,* 754 F.2d 1072, 1079 (3d Cir.1985) (articulating that the *Gertz* "restriction was that plaintiffs may recover compensation for 'actual injury' but not presumed or punitive damages unless the heightened *New York Times* actual malice standard is used"). Subsequently, the Court clarified that the *Gertz* requirement for presumed damages applies when the publication involves an issue of public concern and the defendant is a member of the media. *Dun & Bradstreet, Inc.,* 472 U.S. at 756, 105 S.Ct. 2939 (distinguishing and holding that actual malice was not required when the plaintiff and issues involved were private). Fur-

thermore, the Restatement of Torts predicts, based on First Amendment caselaw, including *Gertz,* that in the event the Court holds that nominal or presumed damages cannot be recovered absent proof of actual harm, "it seems most likely that the restriction will not be held to apply when the defendant [acted with actual malice]." Restatement of Torts (Second) § 620, cmt. c.

To apply this rule of *Gertz* to actions involving public figures would be redundant; the First Amendment already demands that public figures such as plaintiff prove actual malice as a constitutional prerequisite to liability.[9] Since this court has already ruled that there is sufficient evidence of actual malice to require jury consideration, plaintiff has concurrently satisfied the only constitutional prerequisite that has ever been applied to presumed damages. *See* Memorandum and Order (Yohn, J., July 18, 2003).[10] Regardless of whether the Court decides at some subsequent point in time to further limit a public figure's access to presumed damages, I must apply the law as it now stands, which

has left untouched the common law rule of permitting such damages.

Pennsylvania law on this issue appears to be in a state of transition. Traditionally, Pennsylvania followed the common law rule that presumed damages were permissible in defamation cases. In *Corabi,* the Pennsylvania Supreme Court explicitly adopted several Restatement provisions, including one that approved presumed damages. 273 A.2d at 919–20. Restatement (First) of Torts, § 621 (1938) ("One who is liable for a libel or for a slander actionable per se is liable for harm caused thereby to the reputation of the person defamed *or in the absence of proof of such harm, for the harm which normally results from such a defamation.*") (italics added). More recently, the Pennsylvania Superior Court approved the Pennsylvania Suggested Standard Civil Jury Instructions for defamation damages which charges the jury on presumed damages. *Frisk v. News Company,* 361 Pa.Super. 536, 523 A.2d 347, 353–54 (1986) (upholding lower court's instructions which mirrored Pa.S.S.J.I. (Civ) 13.10(B)).[11]

9. This rule originated as to public "officials" but was extended to include public "figures," both "all-purpose" and "limited" public figures. *See Gertz v. Welch, Inc.,* 418 U.S. 323, 342–50, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (extending actual malice requirement to include public figures and defining two categories of such figures); *Schiavone Construction Co. v. Time, Inc.,* 847 F.2d 1069, 1077–78 (3d Cir.1988) (employing the *Gertz* distinction and applying the actual malice standard to limited public figures).

10. Defendants incorrectly assert that the First Amendment supports a rejection of presumed damages. Am. Mot. for Sum. J. on Rep. Harm, at 8–9. In an attempt to support their contention, defendants excerpt a *Gertz* quote, yet they construe it out of context. The quote expresses the Court's reasons for establishing the actual malice prerequisite to presumed damages, *not* reasons for rejecting presumed damages in toto, which the Court did not do. The only other support cited by defendants is

*New York Times,* which again reflects the policy underlying the actual malice requirement. Thus, defendant's argument simply confirms the court's analysis above—that the only First Amendment restriction that has been placed on presumed damages is the actual malice prerequisite, a hurdle that the present plaintiff is already required to clear in order to get to the damages phase of the trial.

11. If you find that the defendant acted either intentionally or recklessly in publishing the false and defamatory communication, you may presume that the plaintiff suffered both injury to his reputation and the emotional distress, mental anguish, and humiliation that would result from such a communication. This means you need not have proof that the plaintiff suffered [these types of harm] in order to award him damages for such harm because such harm is presumed by the law when a defendant publishes a false and defamatory communication with the knowledge

On the other hand, even more recent Pennsylvania caselaw suggests the beginning of a trend away from the common law acceptance of presumed damages. In *Walker v. Grand Central Sanitation, Inc.*, the Pennsylvania Superior Court held that "a defendant who publishes a statement which can be considered slander per se is liable for the proven, actual harm the publication causes." 634 A.2d at 244; *see also Synygy, Inc. v. Scott–Levin, Inc.*, 51 F.Supp.2d. 570, 582 (E.D.Pa.1999) (applying this rule); *Pyle v. Meritor Savings Bank, et. al.*, 1996 WL 115048, at *3 (E.D.Pa. Mar.13, 1996) (same). Notably, *Walker* involved a case of slander, rather than libel. *But see district courts in Pennsylvania applying the Walker rule against presumed damages to libel, Simms v. Exeter Architectural Products, Inc.*, 916 F.Supp. 432 (W.D.Pa.1996); *Synygy, Inc.*, 51 F.Supp.2d. at 581–82.

Although the court believes that there is trend beginning in Pennsylvania to disallow presumed damages, as a district court applying Pennsylvania law, the trend is not mine to set. Accordingly, until a more unequivocal statement is made by the Pennsylvania Supreme Court or Pennsylvania Legislature that overturns the state's prior law permitting presumed damages, such damages are probably still available to defamation plaintiffs.

Importantly, however, the court recognizes sound policy reasons to reject presumed damages. First, the purpose of compensatory damages promotes a rejection of presumed damages. Pennsylvania has a "policy of compensating, in full, a plaintiff who has proven her right to redress, while ensuring that we do so in a manner that is not unfair to the liable party." *Walker*, 634 A.2d at 244. As articulated by the state's highest court, "[t]he most important function of an action

for defamation is to give the innocent and *injured* plaintiff a public vindication of his good name. Its primary purpose is to restore his unjustly tarnished reputation . . . ." *Gaetano v. Sharon Herald Co.*, 426 Pa. 179, 231 A.2d 753, 755 (1967) (emphasis added) (quoted in *Agriss*, 483 A.2d at 473). A plaintiff who has suffered no harm cannot be compensated; a plaintiff who has suffered no harm is not an "injured" plaintiff.

Second, there is valid judicial concern regarding fair calculations of damages, irrespective of whether the plaintiff is private or public, or whether it involves slander or libel. Allowance of presumed damages requires a jury to generate a compensatory award without any evidence of that which the jury is compensating. As another court in our circuit articulated, "[w]ith presumed damages, because the plaintiff is not required to prove any sort of harm, the jury is put in the untenable position of assigning a dollar value to a harm about which it has heard no evidence." *Synygy*, 51 F.Supp.2d at 581. The *Synygy* court made this point convincingly by contrasting jury awards for pain and suffering:

> Presumed damages present a much greater problem for juries than damages for pain and suffering. Although putting a price tag on a plaintiff's pain and suffering is challenging, given the intangible nature of that type of injury, plaintiff is still required to put on evidence of that harm in order to give the trier of fact some basis for the award.

*Id.*

A third reason to disallow presumed damages is that the actual damages standard is a low one, easily satisfied, because

---

that it is false or in reckless disregard of whether it is true or false.

Pennsylvania requires simply general actual damages rather than the more stringent special actual damages. Pennsylvania caselaw suggests that any showing, no matter how small, of reputational loss is sufficient to deliver the issue of compensatory damages to the jury. Consequently, exceedingly few defamation plaintiffs should find this to be an insurmountable obstacle to recovery.[12]

Regardless of this review of Pennsylvania law, because I have already decided that plaintiff has presented sufficient evidence of actual harm to survive summary judgment, it is unnecessary at this time for me to decide the presumed damages issue under Pennsylvania law. Given the current ambiguity of Pennsylvania law, plaintiff may wish to consider whether he wants to pursue presumed damages at trial thereby risking a later adverse decision on the issue.

## II. Punitive Damages

█ Defendants also move for summary judgment on the issue of punitive damages. As with compensatory damages, a plaintiff's defamation claim must be viewed through the lense of both constitutional and state law. The only potential constitutional prerequisite to punitive damages is the same as for presumed damages, actual malice, which I have already decided is an issue for the jury.[13]

█ Pennsylvania law imposes an additional prerequisite, beyond the constitutional requirement, to a defamation plaintiff's recovery of punitive damages. As plaintiff concedes, in order to recover punitive damages, a defamation plaintiff must show that a defendant acted with common law malice.[14] *Sprague v. Walter*, 441 Pa.Super. 1, 656 A.2d 890, 923 (1995); *DiSalle v. P.G. Pub. Co.*, 375 Pa.Super. 510, 544 A.2d 1345, 1370 (1988). As with other elements, plaintiff must present evidence that there exists a genuine issue of material fact in dispute that relates to the issue of common law malice. As with the issue of compensatory harm, the dispute between these parties on the issue of punitive damages is over factual inferences rather than the facts themselves. I find that plaintiff's evidence, and the rational inferences thereof, demonstrate evidence that could support a finding of common law malice.

Defendants' argument is twofold. First, they assert that plaintiff must meet a heightened evidentiary standard in that he must show "clear and convincing"[15] evidence of common law malice, a standard

12. For a more detailed explanation of actual harm, see infra, section I.A.

13. *See Gertz*, 418 U.S. at 349, 94 S.Ct. 2997 (holding that, under the First Amendment, for defamation claims involving public issues, a plaintiff must show actual malice to recover presumed or punitive damages); *see supra*, section I.B (analyzing the constitutional rule in the context of presumed damages). As explained above, I have already ruled that plaintiff has provided evidence of actual malice sufficient to reach a jury; thus, at the same time, he has satisfied the constitutional requirement for taking punitive damages to the jury.

14. This is a distinct concept from the First Amendment requirement of "actual malice"

which is required for liability in a public figure's defamation action as well as for any defamation plaintiff seeking presumed or punitive damages. Common law malice, in contrast, is a different element, required under Pennsylvania law to establish a claim for punitive damages. I distinguish the two concepts below.

15. This is the same heightened standard that is constitutionally required for proof of actual malice. *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *see also* Order and Memorandum, (Yohn, J., July 18, 2003) (explaining and applying the actual malice standard to the present case).

which his evidence does not satisfy. Mot. for Sum J. on Pun. Dam., at 4. Second, they assert that even if the lower default "preponderance of the evidence" standard is applied, plaintiff fails to meet this as well. Def. Reply for Sum. J. on Pun. Dam., at 3. I disagree on both counts.

Pennsylvania courts have seen fit to apply the default "preponderance of the evidence" standard to proof of common law malice for purposes of punitive damages, regardless of whether the plaintiff is a public figure. *Sprague v. Walter*, 441 Pa.Super. 1, 656 A.2d 890, 923 (1995). Although defendants rely solely on *DiSalle v. P.G. Pub. Co.* for the proposition that the "clear and convincing" standard applies, that court specifically stated that it was leaving the question of the appropriate standard for another day because it was unnecessary for determination of the case. 544 A.2d at 1371.[16] Seven years after *DiSalle*, the court indicated its answer to this question. The *Sprague* court recognized that "[c]ourts considering libel cases should be guided by the same general rules regarding damages that govern other types of tort recovery. The standard of proof for punitive damages in Pennsylvania traditionally has been proof by a pre-ponderance of the evidence." *Sprague*, 656 A.2d at 923. It then applied these principles and approved jury instructions regarding punitive damages for a public figure plaintiff that did not include the "clear and convincing" standard. *Id.* Pennsylvania is of course free to apply a heightened standard to its punitive damages requirements; however, until it unequivocally does so, it is proper for this court to apply the general "preponderance of the evidence" standard to the issue of punitive damages.

 Having decided that the lower default standard applies, the court will examine whether plaintiff's evidence satisfies it and thereby precludes summary judgment. Pennsylvania has adopted Section 908(2) of the Restatement (Second) of Torts on the definition of common law malice for purposes of awarding punitive damages. *Sprague*, 656 A.2d at 922 (citing *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747–748 (1984)); *DiSalle*, 544 A.2d at 1369 (same). Common law malice "involves conduct that is 'outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others ... conduct which is malicious, wanton, reckless, willful, or oppressive....'"[17] *DiSalle*, 544

---

**16.** It is noteworthy, however, that the *DiSalle* court implied the answer to the question it left open. As the court explained, "to the extent that the [defendant] would argue for a more rigorous standard, ... the goal of limiting punitive damage awards 'is best served by focusing on the nature of the defendant's conduct instead of increasing the plaintiff's burden of persuasion.'" *DiSalle*, 544 A.2d at 1371 (quoting *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1098 (1985), addressing punitive damages in products liability case).

**17.** The overlap between the concepts of common law and actual malice has sometimes caused confusion. In some instances, such as the present, both types of malice will involve recklessness. The distinction is the object of defendants' recklessness; a defendant who

acts with common law malice acts with recklessness toward the plaintiff himself, whereas one acting with actual malice acts with recklessness toward the truth of the publication. *DiSalle*, 544 A.2d at 1369; *Banas v. Matthews Intern. Corp.*, 348 Pa.Super. 464, 502 A.2d 637, 654 (1985) ("Common law malice of the type described by Section 908 of the Restatement refers to the defendant's attitude toward the plaintiff whereas actual malice as outlined in [*New York Times v.*] *Sullivan* refers to the defendant's attitude toward the truth."); *see also Gertz*, 418 U.S. at 395, 94 S.Ct. 2997 ("reckless indifference to consequences"). Crucially, "ill will toward the plaintiff, or bad motives, are not elements of the actual malice standard." *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 52 n. 18, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) (plurality opinion) (quoted in *DiSalle*, 544 A.2d at 1369).

A.2d at 1364 (quoting Restatement (Second) of Torts § 908(2)); *see also Sprague,* 656 A.2d at 923 (approving jury charge that conduct is sufficiently outrageous if it shows reckless indifference to the "interest of others").

■ "In determining whether punitive damages should be awarded, the act itself together with all the circumstances ... should be considered." *Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355, 358 (1963) (citing comment e to § 908 of the Restatement (Second) of Torts which states this position); *Focht v. Rabada,* 217 Pa.Super. 35, 268 A.2d 157, 160 (1970)(citing and applying this comment). Importantly, some acts, by themselves, provide adequate evidence of reckless indifference to others' interests. *Focht,* 268 A.2d at 161 ("In certain factual circumstances the risk to others ... may be so obvious and the probability that harm will follow so great that outrageous misconduct may be established without reference to motive or intent."). Defendants aver that there is no evidence demonstrating common law malice. The court, however, agrees with plaintiff; there is evidence from which a reasonable juror could infer the requisite recklessness. Thus, there is a genuine issue of material fact for jury consideration.

Circumstantial evidence, in connection with defendants' conduct itself, could support a rational juror's conclusion that defendants acted with common law malice. Plaintiff has proffered evidence that defendants knew that the term "fixer" had a defamatory meaning. A rational juror could conclude that in light of this awareness, publishing an article referring to plaintiff as a lawyer-cum-fixer was outrageous because it constituted reckless indifference to plaintiff's interests.

The evidence of defendants' awareness is three-fold. First, the author of the article, defendant Carter, testified that he looked up the definition of "fixer" in a dictionary and found the defamatory meaning. Oppos. to Sum J. on Pun. Dam, Ex. R, at 18 (Dep. of Carter).[18] Second, Managing Editor Debra Cassens, who reviewed the article before its publication, conceded that she assumed that the average reader of the journal would be familiar with the defamatory meaning of the word "fixer." Oppos. to Sum J. on Pun. Dam., Ex. Y, at 70–71 (Dep. of Cassens).[19] Third, the defendant Journal has previously published articles containing words with the root "fix" in a defamatory capacity. Oppos. to Sum J. on Pun. Dam, Exs. 1–3 ("FBI Corruption Probe: Chicago Judge, Politicians Charged with Fixing Cases in Operation Gamba," (date omitted); "Ac-

---

18. Q. Did you ever look up the dictionary definition of fixer?
 A. I have.
 Q. Does one of the definitions include to influence a result by improper or illegal means?
 A. In the dictionary I used, that is listed later as a colloquial meaning.
 Although the deposition does not pinpoint precisely when defendant Carter looked up this definition, given the current posture of the case, it is a reasonable inference in the non-movant's favor that it was prior to the publication of the article in question.

19. Q. Is it your understanding that the typical reader of the ABA Journal would be familiar with the use of the word fixer as referencing a lawyer who uses bribes or other unlawful means to prearrange the outcome of cases?
 A. My assumption is that the reader would be familiar with both negative and positive meanings of the word.
 Q. And, therefore, the reader would be familiar with the meaning—use of the word fixer to mean a lawyer who prearranges the outcome of cases through bribes or other unlawful means?
 [Objection and question repeated]
 A. That is one meaning of the word that they would be familiar with.

quittal Doesn't Stop Prosecutors: Retrial of Alleged Hit Man Sought After Informant Claims Case was Fixed," April 1994; "And Now an Encore: Libel Lawyer Files Lawsuit Alleging Trial abuses," (date omitted)) (including defamatory use of "fix", "fixer" and "fixing"). All of this evidence suggests awareness of the potential to defame and thereby harm the plaintiff.

Furthermore, in the event that a jury concludes that defendants were aware of the defamatory meaning of "fixer," there is additional evidence that would support a finding of recklessness toward the plaintiff. Defendant Carter acknowledged that it would be difficult, maybe even impossible, to think of an accusation against a lawyer that is more defamatory then accusing one of being a fixer. Oppos. to Sum J. on Pun Dam., Ex. R, at 177 (Dep. of Carter).[20] Accordingly, if defendants were aware of the defamatory potential, the fact that they were also aware of the extent of the potential reputational harm to the plaintiff that would occur could support a finding of recklessness.[21]

Defendants argue that there is no evidence that they acted with hostility, ill will, or evil motive toward plaintiff, with an intent to harm him. They assert that they never had any contact with plaintiff and, in fact, had only heard of him in a very minor way. This position, however, wholly ignores a central inquiry in determining the common law malice issue: whether they acted with a reckless indifference to plaintiff's rights and interests.

Plaintiff's evidence, although very far from conclusive, is sufficient to create a genuine issue of material fact as to common law malice, which bears on the availability of punitive damages; this is all that is required of plaintiff's evidence at this stage of the case.

## CONCLUSION

For the aforementioned reasons, I will deny defendants' motions for summary judgment on the issues of (1) reputational and emotional harm and (2) punitive damages. Plaintiff has provided evidence upon which a rational jury could award such damages. Defendants contest the factual inferences that support plaintiff's claims for these damages. As such, there are genuine issues of material fact properly left for jury determination.

An appropriate order follows.

### Order

And now, this _____ day of July, 2003, upon consideration of defendants' memoranda of law in support of their motion for summary judgment on reputational harm and emotional distress, and various related supplemental filings (Docs. 85, 86, 87, 103, 121, 163, 165), and plaintiff's memoranda of law in opposition thereto, and various related supplemental filings (Docs. 91, 92, 164, 166), and upon consideration of defen-

---

20. Q. Have you ever read any articles or stories or seen movies where lawyers were called fixers?

 A. I have seen instances where lawyers have been accused specifically of criminal corrupt acts, often it says allegations of trying to fix a case.

 Q. Can you think of anything more demeaning, more derogatory, more defamatory than that?

 A. If you were to use that, it's pretty bad, if it's used like that. There may be some-

thing more derogatory, and it would take time for us to work that out.

21. It seems logical that the jury could find recklessness based upon an interaction between the probability of harm and the severity of the potential harm. To illustrate, awareness that harm is certain to occur from one's conduct might be reckless despite the fact that the harm is minor. Inversely, awareness that the harm is only slightly possible might be sufficient to constitute recklessness where the harm, if suffered, would be extreme.

dants' memoranda of law in support of their motion for summary judgment on punitive damages, and various related supplemental filings (Docs. 83, 84, 101), and plaintiff's memoranda of law in opposition thereto and various related supplemental filings (Docs. 96, 97, 98, 99), it is hereby ORDERED that:

1. Defendants' motion for summary judgment on the issues of reputational harm and emotional distress is DENIED; and

2. Defendants' motion for summary judgment on the issue of punitive damages is DENIED.