

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-2005

# Capozzi v. Lucas

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3468

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Capozzi v. Lucas" (2005). *2005 Decisions.* Paper 539.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/539

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-3468

LOUIS J. CAPOZZI;
CAPOZZI AND ASSOCIATES, P.C.

v.

CHRISTOPHER S. LUCAS;
LAW OFFICES OF CHRISTOPHER S.
LUCAS AND ASSOCIATES,

Appellants

_____

On appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No.: 03-CV-00811
District Judge: The Honorable John E. Jones III

_____

Submitted pursuant to Third Circuit LAR 34.1(a)
September 15, 2005

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Filed: September 16, 2005)
_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.

Christopher S. Lucas appeals a final judgment of the District Court entered in favor of Louis J. Capozzi following a bench trial. The District Court entered judgment in favor of Capozzi in connection with Capozzi's state law defamation claim against Lucas. Lucas challenges the District Court's decision, arguing that the allegedly defamatory statements contained in a letter drafted by Lucas and circulated to prospective clients cannot form the basis for a successful defamation claim because they were "substantially true." Lucas also challenges certain of the District Court's evidentiary rulings, as well as the District Court's decision to award damages to Capozzi. We will affirm the judgment of the District Court.[1]

Because we write only for the parties, we restrict our discussion to the facts and legal principles necessary to resolve this appeal. The parties are competing lawyers whose practices focus primarily upon providing representation to Pennsylvania long-term care providers such as nursing homes. Both firms advise their clients on issues relating to the receipt of reimbursements from Pennsylvania's Department of Public Welfare ("DPW"), including appeals from rate-setting decisions made under DPW's reimbursement system, appeals from DPW audit findings, and the potential settlement of such appeals through DPW's "Intergovernmental Transfer" ("IGT") program. The IGT

---

[1]Capozzi's complaint included a Lanham Act claim arising under 15 U.S.C. § 1125(a)(1)(B). This claim was dismissed at the close of Capozzi's case-in-chief. The District Court exercised supplemental jurisdiction over Capozzi's Pennsylvania defamation claim pursuant to 28 U.S.C. § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

program refers to a process in which Pennsylvania counties may transfer funds to DPW to be used in settling claims filed by long-term care providers. Transfer of such funds from a county to DPW enables DPW to collect matching funds from the federal government. Documents that memorialize this process of transfer-matching-reimbursement in particular cases are known as IGT Agreements.

On August 28, 2000, Capozzi filed a lawsuit, styled as a "Class Action," in the Pennsylvania Board of Claims. This lawsuit was filed on behalf of a group of nursing home chains that wished to challenge certain aspects of DPW's reimbursement procedures and practices. The group of entities that authorized the filing of the lawsuit organized itself under the banner of "CPR for Quality Care." The CPR for Quality Care Organizing Agreement authorized a contingency payment to counsel (Capozzi) of "10% of any increases in payment resulting from the Class Action, including any increases resulting from a settlement of the Class Action, from a settlement of any related matters involving Members, or from any distributions to the Members occurring after August 1, 2000 as may result from an Intergovernmental Transfer Agreement requiring a settlement of any related matters involving the Members." Prior to and independent of this Organizing Agreement, Capozzi had negotiated hourly and contingent fee arrangements with certain preexisting clients whom he represented in connection with DPW rate appeals. A number of these pre-existing clients joined the CPR for Quality Care lawsuit after it was filed. Some elected to maintain their earlier, separate fee arrangements with

3

Capozzi, while a number opted instead to bind themselves to the Organizing Agreement's 10% contingency fee provision.

Following Capozzi's filing of the CPR for Quality Care lawsuit with the Pennsylvania Board of Claims, settlement offers were made by DPW in connection with a series of IGT Agreements that proposed to utilize county and matching funds to resolve pending nursing facility rate appeals. An October 13, 2000 IGT Agreement made available $152,861,823 to resolve pending nursing facility rate appeals. Most of the nursing facilities represented by Capozzi accepted the funds offered in this IGT Agreement, agreeing in return to withdraw pending rate appeals and waive any further participation in the Class Action filed by Capozzi. The Class Action proceeded with the remaining nursing facilities that were among the named plaintiffs, but ultimately was dismissed by the Commonwealth Court based on a finding that the Board of Claims lacked jurisdiction over the case.

As a result of these proceedings, Capozzi sent bills to various nursing facilities that had received funds in connection with the October 13, 2000 IGT Agreement, including facilities that were parties to the CPR for Quality Care Organizing Agreement containing the contingent fee provision quoted above. It appears from the record that certain facilities receiving these bills took the position that they had not acceded to the Organizing Agreement's contingent fee provision, instead retaining an independent fee arrangement with Capozzi that arguably did not require payment of the monies sought.

4

When these entities refused to pay, Capozzi initiated fee litigation against them. As of April 2003, Lucas and his firm represented five such facilities in connection with this fee litigation. On April 23, 2003, in what was apparently an effort to obtain additional clients, Lucas faxed a letter to approximately 700 recipients. In this letter, he described the existence of contingent fee arrangements between Capozzi and various entities that had accepted settlement funds pursuant to the October 13, 2000 IGT Agreement. This letter noted that some facilities that paid Capozzi did so based on the assumption that the receipt of IGT funds was within the contingency spelled out in an applicable fee agreement, "and/or because they believed Capozzi's work contributed to the establishment and/or aggregation of the IGT fund."

The letter did not distinguish between entities that had preexisting contingency fee arrangements with Capozzi in connection with Capozzi's work on rate appeals, and entities whose only contingent fee arrangement with Capozzi arose under the Organizing Agreement. Nor did the letter distinguish between pre-existing Capozzi clients that had abandoned their earlier fee arrangements with Capozzi upon joining the CPR for Quality Care lawsuit, and those that had retained such arrangements in lieu of the Organizing Agreement's 10% contingency fee provision. The letter described Lucas's work on behalf of his clients (the "Facilities"), and stated, "[W]e believe that if the court finds that the receipt of the IGT funds by these Facilities is not within the contingency set forth in the Capozzi contingent fee agreements, other Facilities that have already paid Capozzi a

5

percentage of their IGT funds would be entitled to a refund." The letter concluded by urging recipients to contact Lucas promptly, in order to avoid the expiration of the statute of limitations.

Neither party disputes the District Court's factual finding that the "scope of contingency" argument outlined in Lucas's letter had no application whatsoever to the vast majority of the 700 recipients of the letter. Indeed, many of these recipients included persons and entities that had never been Capozzi's clients, entities that were not nursing facilities, entities that had no connection to the reimbursement system that was the subject of the CPR for Quality Care lawsuit, and entities that, while represented by Capozzi, had never entered into any sort of contingent fee agreement with him, whether in connection with the Organizing Agreement or otherwise. More importantly, Lucas concedes that the "scope of contingency" argument had no validity with respect to recipients whose only relationship with Capozzi arose from participation in the CPR for Quality Care lawsuit, and who were subject to the 10% contingency fee provision contained in the Organizing Agreement. In sum, Lucas does not dispute that the "scope of contingency" argument potentially applied, at most, to between three and five of the letter's 700 initial addressees.[2]

Based on these facts, the District Court held that Lucas's letter was defamatory

---

[2]After faxing the letter to 700 recipients, Lucas later placed an advertisement containing similar text in a trade publication. He also posted a link to an electronic copy of the letter on his firm's website.

under Pennsylvania law, in that it falsely implied that recipients who had paid fees to Capozzi had been improperly billed for matters outside the scope of their own contingent fee arrangements. Lucas challenges this holding, arguing that the statements contained in the letter were "substantially true," and thus not defamatory. However, Lucas's truth defense is predicated entirely on the potential existence of *other* unproven defenses to payment and/or theories of reimbursement that may have been available to entities that had paid funds to Capozzi after receiving funds pursuant to the October 13, 2000 IGT Agreement. In this sense, Lucas's substantive challenge to the District Court's decision is intertwined with his evidentiary challenges, in which he asserts that the District Court improperly barred him from introducing evidence concerning various ways in which Capozzi may have allegedly engaged in improper or unauthorized billing with respect to clients who received the Lucas letter.

In an appeal following a bench trial, a district court's findings of fact "shall not be set aside unless clearly erroneous." *Newark Branch, NAACP v. City of Bayonne*, 134 F.3d 113, 119 (3d Cir. 1998). A district court's evidentiary rulings are reviewed for an abuse of discretion. *See In re Merritt Logan, Inc. v. Fleming Companies*, 901 F.2d 349, 359 (3d Cir. 1990). A district court's legal conclusions are subject to plenary review. *See Fotta v. Trustees of United Mine Workers* 319 F.3d 612, 615-16 (3d Cir. 2003). "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing

with him. A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade, or profession." *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 652 (Pa. Super. 1999). While truth is a defense to a claim of defamation, a statement must be considered in context, and the literal truth of isolated sentences does not preclude a finding of falsity based on the existence of a misleading implication. *See Davis v. Resources for Human Development*, 770 A.2d 353, 357 (Pa. Super. 2001); *Larsen v. Philadelphia Newspapers, Inc.*, 543 A.2d 1181, 1189 (Pa. Super. 1988) ("The falsity with which we are concerned arises from the inference derived from published statements, whether those statements are actually true or not.").

The District Court's holding with respect to the defamatory nature of Lucas's letter was proper, and the District Court did not abuse its discretion in excluding the evidence that Lucas sought to introduce. Even if the fee litigation initiated by Capozzi had been favorably resolved in favor of Lucas's clients pursuant to the theory outlined in Lucas's letter, this fact alone would not have provided a basis for concluding that Capozzi had billed the letter's recipients in a manner not contemplated by the contingent fee provision contained in the Organizing Agreement to which many of the recipients were parties. Lucas's letter falsely implied that such a direct correlation existed, and this implication of contractually-unauthorized billing by Capozzi tended to harm Capozzi's reputation among those who viewed the letter. The sweeping nature of Lucas's assertion, which

8

failed to acknowledge the existence of the various fee arrangements Capozzi had negotiated with his clients, had a tendency to be particularly harmful to Capozzi's reputation amongst clients who were subject to the Organizing Agreement and had paid to Capozzi a portion of the funds received under the October 13, 2000 IGT Agreement, notwithstanding that the particular theory of improper billing described in the letter was inapplicable to any such client whose involvement with Capozzi was limited to the CPR for Quality Care "Class Action."

Given the nature of Capozzi's claim, Lucas cannot seek to defend the falsity of the implications concerning Capozzi's contractually-unauthorized billing by introducing evidence concerning other theories of alleged improper billing that were not referenced in his letter. Lucas's arguments concerning the truth defense, and his challenges to the District Court's evidentiary rulings, improperly conflate the relatively narrow scope of the false implication arising from Lucas's letter with the breadth of the general language used by the courts in describing the reputational harm inflicted by a defamatory statement. This approach is contrary to the manner in which the truth defense is applied in Pennsylvania courts, because, while "it is permissible to show that one claiming damages for injury to his reputation has a bad reputation, *proof of separate acts of bad conduct* or guilt of criminal offenses is not admissible on an issue of general reputation, not even to mitigate damages." *See Frisk v. News Company*, 523 A.2d 347, 351-52 (Pa. Super. 1986) (quoting *Bausewine v. Norristown Herald, Inc.*, 41 A.2d 736, 742 (Pa. 1945) (emphasis

9

added)).[3] Thus, Lucas's attempt to establish a truth defense for statements concerning the scope of Capozzi's contingent fee arrangement with his clients by introducing unrelated evidence concerning separate challenges to Capozzi's billing practices was properly rejected by the District Court.

The fact that Lucas's letter outlined a theory of fee recovery that was potentially applicable to a small number of the recipients does not change the result. "Publication" of a defamatory statement occurs when it is circulated to third parties, *Davis*, 770 A.2d at 358, but a statement circulated to third parties may nonetheless be "conditionally privileged" if it was made on a proper occasion, from a proper motive, in a proper manner, and based upon reasonable cause. *See Beckman v. Dunn*, 419 A.2d 583, 587 (Pa. Super. 1980) (citing *Baird v. Dun & Bradstreet, Inc.*, 285 A.2d 166, 171 (Pa. 1971)). We need not decide whether Lucas's letter was "conditionally privileged" in the first instance. It is well settled that a conditional privilege may be lost if the publisher exceeds the scope of the privilege by publishing the defamation to unauthorized parties who lack a valid interest in the underlying subject matter. *See Miketic v. Baron*, 675 A.2d 324, 329 (Pa. Super. 1996); *Agriss v. Roadway Express, Inc.*, 483 A.2d 456, 463-64 (Pa. Super. 1984). A conclusion that a conditional privilege has been abused is a finding of fact subject to review for clear error. *See Agriss*, 483 A.2d at 463 (citing *Montgomery v. City of*

---

[3]Applying this rule, the *Frisk* court rejected attempts by a defendant to introduce newspaper articles containing accusations of misconduct against the plaintiffs, noting that the subject matter of these other articles was not related to the contents of the allegedly defamatory statements that gave rise to the plaintiff's claim. *See Frisk*, 523 A.2d at 352.

10

*Philadelphia*, 140 A.2d 100, 102-03 & n.4 (Pa. 1958)). Given the facts of this case as found by the District Court, we hold that the District Court did not commit clear error in concluding that any conditional privilege that might apply was lost by virtue of Lucas having circulated his letter to over 700 recipients, the vast majority of whom were in no position to challenge Capozzi's prior billings based upon the "scope of contingency" theory outlined by Lucas.

In addition to the issues discussed above, Lucas also challenges the District Court's award of damages to Capozzi and Capozzi's firm. Lucas is correct in stating that as a matter of law, a plaintiff's "actual" or compensatory damages in a defamation case must be established through competent proof. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). Pennsylvania law recognizes various types of damages in connection with defamation claims. Relevant here are "general damages," which refer to those compensatory damages that typically flow from defamation, such as impairment of reputation, personal humiliation, and mental anguish and suffering. *See Marcone v. Penthouse Int'l Magazine*, 754 F.2d 1072, 1077 (3d Cir. 1985) (applying Pennsylvania law); *Sprague v. Am. Bar Ass'n*, 276 F. Supp. 2d 365, 368 (E.D. Pa. 2003) (applying Pennsylvania law, and citing *Walker v. Grand Central Sanitation, Inc.*, 634 A.2d 237, 243 (Pa. Super. 1993)). Capozzi introduced sufficient evidence at trial from which a reasonable factfinder could infer the existence of such damages, and thus the District Court did not err in awarding compensatory damages of $500 to Capozzi and $1500 to

11

Capozzi's law firm.

We have considered Lucas's other arguments in addition to those discussed above, and find them to be without merit. The judgment of the District Court is affirmed.